**DICKINSON WRIGHT PLLC**
John L. Krieger (CA Bar No. 212325)
Email: jkrieger@dickinson-wright.com
3883 Howard Hughes Parkway, Suite 800
Las Vegas, NV 89169
Tel: (702) 550-4400
Fax: (844) 670-6009

*Attorneys for Plaintiff*
*Hot Girl Walk LLC*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOT GIRL WALK LLC, a Delaware limited liability company, | Case No.: |
| *Plaintiff*, | **COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| FASHION NOVA, LLC a California limited liability company, | |
| *Defendant*. | |

## COMPLAINT

Plaintiff Hot Girl Walk LLC ("HGW"), by and through counsel, as for its Complaint against Defendant Fashion Nova, LLC ("Fashion Nova") and alleges as follows:

## JURISDICTION AND VENUE

1.     The Court has federal subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b) by virtue of 15 U.S.C. §1125, *et seq.*, in that the case arises out of § 43(a) of the Lanham Act for trademark jurisdiction and supplemental jurisdiction under 28 U.S.C. §§ 1367(a) and 1338(a) and (b).

2.     Venue is proper, *inter alia*, under 28 U.S.C. § 1391(b) because, on information and belief, a substantial part of the events or omissions giving rise to these claims occurred in this judicial district.

3.     This Court has personal jurisdiction over Defendant because it transacts substantial business in the County of Los Angeles, State of California.

## THE PARTIES

4.     HGW is a Delaware limited liability company that does business in California at 1014 S Westlake Blvd, Suite 14-1331, Westlake Village, CA 91361.

5.     On information and belief, Defendant Fashion Nova is a California limited liability company with a principal place of business at 8401 Van Nuys Blvd. #23, Panorama City, California 91402.

## FACTUAL BACKGROUND

### A.     *The HGW Marks*

6.     HGW is recognized worldwide as the owner of the iconic "Hot Girl Walk" brand, which is a leading brand in fitness, wellness, and female empowerment.

7.     Between November of 2020 and early 2021, Mia Lind, a then-student at the University of Southern California, conceived of the HOT GIRL WALK® during the Covid lockdown, on top of her many college commitments and her employment.

8.     The HOT GIRL WALK® is a four-mile outdoor walk, where the focus is on gratitude (*e.g.*, weeding out negative thoughts), thinking positively about goals and plans, and reminding yourself of all your accomplishments, thus giving yourself confidence. This fitness walk became a training tool for Ms. Lind, her friends, and eventually larger groups.

9.     In and around early 2021, Ms. Lind originated the concept of the HOT GIRL WALK® brand (the "HGW brand") and has been providing fitness training

and inspirational messaging based on her program that includes, but is not limited to, the HOT GIRL WALK®.

10.    As shown below, Ms. Lind created the first HOT GIRL WALK® TikTok video and posted it on January 23, 2021 using the TikTok handle @exactlyliketheothergirls:



11.    In addition to TikTok, the HGW brand eventually grew to other social media platforms, like Instagram, Facebook, and the website https://www.hotgirlwalk.com. The current homepage of the HGW brand's website is shown below:



12.     Many domestic and international news stories and articles were written about the HOT GIRL WALK® crediting Ms. Lind with its conceptualization and branding by numerous reputable multimedia organizations, including CNN, Fox News, The Washington Post, and The New York Times. Yahoo!, E! News, Vogue, Cosmopolitan, and Consumer Reports.

13.     Between January 2021 and April 2021, exponentially the HGW brand went viral and now there are over 3 million views of Ms. Lind's first TikTok. The HGW brand has grown very quickly and continues to do so.

14.     In May 2021, Ms. Lind graduated from the University of Southern California *Magna Cum Laude* with a communication major and minor in business and, up until September 2023, was working full time as an Account Executive at Oracle Corporation, a multinational software company. Ms. Lind resigned from Oracle in September 2023 to work full-time on building her brand and her company.

15.     The value of the female-owned HGW brand continued to grow into 2022, which resulted in HGW obtaining paid sponsorships from well-known brands such as Rael, Skull Candy, Spotify, and Schmooze. HGW continues regularly to collaborate with other companies in an effort to further grow the HGW brand.

16.     Today, HGW owns numerous federal registrations in the United States Patent and Trademark Office (collectively, the "HGW Marks"):

| Mark | U.S. Reg. No. or U.S. App. Ser. No. | Goods & Services |
|------|------|------|
| HOT GIRL WALK | 7,472,231 | Class 35: Retail store services featuring apparel, fitness apparel, apparel accessories, and gifts; advertising, marketing and promotions; Endorsement services, namely, promoting the brands, goods and services of others; promotion of business opportunities; business networking; arranging and conducting special events for business and advertising purposes. |

COMPLAINT                                   4

| HOT GIRL WALK | 7,472,230 | Class 45: Providing information and advice on personal growth, motivation and self-fulfillment. |
| HOT GIRL WALK | 7,037,847 | Class 25: Athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms. Class 41: Physical fitness training of individuals and groups. |
| HOT GIRL WALK | 98/161,458 | Class 9: Digital media, namely, downloadable audio and video recordings featuring personal growth, motivation, self-fulfillment, health, fitness, entertainment and pop culture; downloadable podcasts in the nature of personal growth, motivation, self-fulfillment, health, fitness, entertainment and pop culture. |
| HOT GIRL WALK | 98/161,490 | Class 41: Entertainment services, namely, providing non-downloadable audio and video recordings featuring personal growth, motivation, self-fulfillment, health, fitness, entertainment and pop culture; entertainment services, namely, a multimedia program series featuring personal growth, motivation, self-fulfillment, health, fitness, entertainment and pop culture distributed via various platforms across multiple forms of transmission media; entertainment services, namely, providing podcasts in the field of personal growth, motivation, self-fulfillment, health, fitness, entertainment and pop culture. |
| HOT GIRL WALK | 97/869,195 | Class 3: Non-medicated skin care preparations, namely, skin lotions and creams, facial and body sunscreen creams. Class 9: Downloadable software for use on a mobile device for fitness training. Class 13: Sprays for personal defense purposes. |
| Hot Girl Walk | 98/678,842 | Class 25: Clothing belts; Bottoms as clothing; Dresses; Footwear; Headwear; Clothing jackets; Loungewear; Socks; Sweatbands; Swimwear; Tops as clothing; Undergarments; Athletic uniforms; Wristbands as clothing. |
| Hot Girl Walk | 98/678,862 | Class 35: Retail store services featuring apparel, fitness apparel, apparel accessories, and gifts; advertising, marketing and promotions; Endorsement services, namely, promoting the brands, goods and services of others; promotion of business opportunities; business networking; arranging and conducting special events for business and advertising purposes. |

COMPLAINT                5

| | | |
|---|---|---|
|  | 98/678,884 | Class 41: Entertainment services, namely, providing non-downloadable audio and video recordings featuring personal growth, motivation, self-fulfillment, health, fitness, entertainment and pop culture; entertainment services, namely, a multimedia program series featuring personal growth, motivation, self-fulfillment, health, fitness, entertainment and pop culture distributed via various platforms across multiple forms of transmission media; entertainment services, namely, providing podcasts in the field of personal growth, motivation, self-fulfillment, health, fitness, entertainment and pop culture; organizing, arranging, and conducting meetups in the nature of community, sporting, fitness and cultural events and walking events; arranging and conducting special events for social entertainment purposes; arranging contests; physical fitness training services. |
| HGW | 7,635,719 | Class 45: Providing information and advice on personal growth, motivation and self-fulfillment. |
| HGW | 98/110,695 | Class 25: Clothing belts; Bottoms as clothing; Dresses; Footwear; Headwear; Clothing jackets; Loungewear; Socks; Sweatbands; Swimwear; Tops as clothing; Undergarments; Athletic uniforms. |
| HGW | 98/110,707 | Class 41: Organizing, arranging, and conducting meetups in the nature of community sporting, sporting, fitness and cultural events and walking events; arranging and conducting special events for social entertainment purposes; arranging of contests; physical fitness training services. |
| GRATITUDE, GOALS, CONFIDENCE | 98/678,745 | Class 25: Clothing belts; Bottoms as clothing; Dresses; Footwear; Headwear; Clothing jackets; Loungewear; Socks; Sweatbands; Swimwear; Tops as clothing; Undergarments; Athletic uniforms; Wristbands as clothing |
| GRATITUDE, GOALS, CONFIDENCE | 98/678,761 | Class 41: Entertainment services, namely, providing non-downloadable audio and video recordings featuring personal growth, motivation, self-fulfillment, health, fitness, entertainment and pop culture; entertainment services, namely, a multimedia program series featuring personal growth, motivation, self-fulfillment, health, fitness, entertainment and pop culture distributed via various platforms across multiple forms of transmission media; entertainment services, namely, providing podcasts in the field of personal growth, motivation, self-fulfillment, health, fitness, entertainment and pop culture; organizing, |

| | | arranging, and conducting meetups in the nature of community, sporting, fitness and cultural events and walking events; arranging and conducting special events for social entertainment purposes; arranging contests; physical fitness training services |
|---|---|---|

True and correct copies of Certificates of Registration and TESS printouts for each of the HGW Marks identified above are attached hereto as **Exhibit A**.

17.    The HGW Marks completely blew up on social media with CNN reporting there were 616 million views on TikTok. *See* https://www.cnn.com/cnn-underscored/home/hot-girl-walk-tiktok-trend.

18.    Today, HGW and Mia Lind have over 470,000 followers on social media.

19.    HGW has chapters in 19 cities in the United States and the United Kingdom, with trained HGW Ambassadors leading events. Each chapter has their own, dedicated Facebook account.

20.    HGW has a mailing list with more than 41,000 subscribers, and HGW sends monthly newsletters to its email subscribers, communicating fitness advice, event information, and more.

21.    The HGW brand is well-known in the United States and abroad and immediately recognized by consumers as a symbol of celebrating female empowerment, while not excluding any other gender or sexual orientation. HGW's mission is to unite women in a way that promotes mental and physical wellness through fitness training that is accessible and inclusive to all.

22.    Since 2021, Ms. Lind has invested, and continues to invest, substantial time and money into the HGW Marks and brand. Moreover, the HGW Marks are the subject of licenses and sponsorships all around the country and abroad.

23.    In one collaboration, HGW partnered with Strava in March 2023, a company that owns a well-known fitness application with over 100 million users worldwide, to run a campaign branded HOT GIRL WALK® United, which was a

global challenge to commit more time to movement. Strava found through their research that walking is one of the fastest growing fitness activities for women, and others, and this is why they partnered with such a recognizable brand like HGW for their challenge. The campaign was a huge success, as over 200,000 people, in over 190 countries, participated in the challenge which raised approximately $250,000 for charity. The "Hot Girl Walk club" on Strava is one of the most popular walking clubs on the app, with over 19,300 members and growing.

24.    Furthermore, HGW has spent tremendous resources in coordinating and delivering quality events for its customers, including considerable resources in promoting HGW's brand. HGW has also built significant goodwill with consumers through its "Hot Girl Walk for Good" initiative, which supports women's organizations and charities. Through this initiative, HGW has raised thousands of dollars for Women's organizations throughout the United States

25.    The HGW Marks are also used in conjunction with many brand partnerships, including prominent organization such as Reebok, lululemon, the Strava fitness app, LIFEWTR (PepsiCo), e.l.f. Cosmetics, TikTok Shop, Halara, Cider, ASOS, and the American Heart Association. HGW continues to grow its community through HGW Ambassadors in 19 cities in the United States and worldwide.

26.    The HGW brand's products and services are advertised in a variety of contexts and media, including in print and on the Internet, https://www.hotgirlwalk.com, TikTok, Instagram, Facebook, and other social media sites, actual HGW-facilitated events, walks, and other promotions. Consumers, accordingly, are exposed to the HGW Marks in a wide range of contexts.

27.    In fact, Linktree featured HGW and Ms. Lind on a billboard in Times Square, New York City, from September 25-27, 2025:



Notably, Linktree's advertisement for HGW appeared in a rotation alongside internationally renowned artists Cardi B and Mariah Carey.

28.    Linktree has also promoted Ms. Lind's new book *Hot Girl Walk: Find Happiness, Achieve Your Dreams, and Cultivate Confidence* on the Times Square billboard. Ms. Lind's book is a best-seller on Amazon and Ms. Lind has been featured in numerous well-attended book signing events, including at major book retail chains like Barnes & Noble.

29.    These high-profile placements demonstrate the widespread recognition of HGW's IP, including the HGW Marks.

30.    HGW has worked hard to build its brand and protect its rights in the HGW Marks.

31.    HGW has offered products and services with the HGW Marks all over the world, including throughout the United States. Through its promotion and investment in its brand, extensive HGW-facilitated events, and training on social media, HGW has acquired enormous goodwill in the HGW Marks.

32.    Indeed, the HGW Marks are recognized around the world and throughout the United States by consumers as a fitness training tool combined with the main three pillars which a person focuses on during the four-mile outdoor walk, all to boost positive mental and physical health.

### B.    Defendant's Infringement of the HGW Marks

33.    On information and belief, Fashion Nova is a retail company founded in 2006 and headquartered in Southern California. Defendant has five brick and mortar storefronts in Southern California where it sells low-priced "clubwear."

34.    On information and belief, in 2013, Fashion Nova launched an e-commerce site (https://www.fashionnova.com) to sell so-called "fast-fashion," *i.e.*, inexpensive clothing produced rapidly by mass-market retailers in response to the latest original fashion trends.

35.    On information and belief, Fashion Nova's ability to churn out new clothing so quickly is due in large part to its willingness to copy the copyrighted designs, trademarks, and trade dress elements of well-known designers, such as adidas and Versace, and trade on other's creative efforts in order to bolster Defendant's bottom line.

36.    On information and belief, Fashion Nova's annual sales are around $2 billion, and most of their sales are online through their e-commerce site.

37.    On or about April 19, 2024, Hailey Ordanez, an employee of Fashion Nova, contacted Mia Lind via email regarding a potential collaboration between Fashion Nova and HGW. *See* **Exhibit B**, April 19, 2024 Ordanez email.

38.    On information and belief, at the time of her email, Ms. Ordanez's title was "Social Media Coordinator at Fashion Nova." *See* **Exhibit C**, Ordanez LinkedIn Profile.

39.    In her email, Ms. Ordanez stated "we've been inspired by the incredible work Hot Girl Walk is doing to promote mental health awareness and positivity

within your community. We believe our brands share a common goal of empowering individuals and fostering a supportive environment, which is why we're excited about the possibility of collaborating with you. With May being Mental Health Awareness Month, we see a fantastic opportunity to combine forces and create something truly impactful." *Id*.

40.    Ms. Ordanez's email further states that Fashion Nova's goal "is to create something authentic, impactful, and aligned with both of our brands' values." *Id*. It was apparent to HGW personnel that Ms. Ordanez had done research and knew a lot about HGW.

41.    After several emails back and forth, Mia Lind, Alicia Lind, and Hailey Ordanez, had a meeting via Zoom on May 7, 2024 to discuss a paid collaboration between HGW and Defendant. *See* **Exhibit D**, Zoom Meeting Invitation.

42.    During the call, HGW personnel told Ms. Ordanez that HGW owns the HGW Marks, which are registered trademarks in multiple classes, including apparel.

43.    It was apparent during the call Ms. Ordanez was very excited about a potential collaboration with HGW. She stated on the call that Fashion Nova was definitely going forward with the collaboration with HGW. Ms. Ordanez also said she would invite Ms. Lind to one of Fashion Nova's stores to pick out any outfits she wanted – free of charge.

44.    Following the call on May 7, 2024, HGW emailed Fashion Nova a Rate Card with pricing for collaborations. The Rate Card included this statement in capital letters: "THIS DOCUMENT IS CONFIDENTIAL, AND INCLUDES PROPRIETARY INFORMATION OWNED BY HOT GIRL WALK LLC. PLEASE RESTRICT DISTRIBUTION TO EMPLOYEES OF YOUR COMPANY AND/OR CLIENT, AND DO NOT SHARE WITH UNAUTHORIZED THIRD PARTIES. HOT GIRL WALK IS A REGISTERED TRADEMARK, AND HGW

IS A COMMON LAW, PENDING TRADEMARK, OWNED BY HOT GIRL WALK LLC, ALL RIGHTS RESERVED."

45.    The Rate Card HGW emailed Fashion Nova is substantially the same Rate Card HGW sends to its current and future collaborative partners, including lululemon, ASOS, Cider, Reebok, ECCO, and Halara. Each of these companies is a direct competitor of Fashion Nova.

46.    After receiving the Rate Card, Ms. Ordanez wrote in an email to Ms. Lind on May 13, 2024, "I brought everything we discussed back to the team and we love the idea of a collaboration between our two brands." *See* **Exhibit B**. Ms. Lind followed up via email on May 17, 2024.

47.    Ms. Ordanez never responded to Ms. Lind's May 17, 2024 email. On information and belief, Ms. Ordanez still works for Fashion Nova. *See* **Exhibit C**.

48.    Despite not responding to HGW's May 17 email, Ms. Ordanez signed up for several HGW events and, on information and belief, has received, opened, and interacted with multiple HGW monthly newsletters.

49.    On information and belief, several other Fashion Nova employees also signed up for several HGW events and received and interacted with HGW's monthly newsletters. The newsletters include HGW updates, fitness advice, information on HGW events, and highlights of brands that have collaborated with HGW.

50.    On information and belief, these Fashion Nova employees signed up to receive HGW's communications using their personal email addresses to covertly get information that they then used to appropriate the HGW Marks and brand.

51.    Recent communications with a Fashion Nova competitor prompted HGW to investigate Fashion Nova's business and product offerings. HGW just discovered that it had fallen prey to a scheme that Fashion Nova, on information and belief, uses on other popular, innovative brands that have robust intellectual property portfolios, like adidas and Versace.

52.    On information and belief, Fashion Nova has been offering for sale on its website an entire "Hot Girl Walk" collection of apparel products (the "Infringing Products") since as early as November 2023. *See* **Exhibit E**, Compilation of Screenshots from Fashion Nova's Website.

53.    As shown below, there are multiple Fashion Nova athleisure products for sale that are named or titled "Hot Girl Walk" or "Hot Girl" on Defendant's website:







*See* **Exhibit E**.

54.    As shown below, Defendant even has a dedicated collection of apparel titled "Hot Girl Walk:"

*See* **Exhibit E**.

55.    Indeed, as shown below, by simply searching "Hot Girl" or "Hot Girl Walk" on Fashion Nova's website, an assortment of apparel products consistent with protected classifications of the HGW Marks appear:



*See* **Exhibit E**.

56.    In late October 2025, HGW purchased several of Defendant's Infringing Products. *See* **Exhibit F**, 2025-10-25 Email Invoice from Fashion Nova. As shown below, each of the Infringing Products HGW purchased from Fashion Nova and received by HGW included a hang tag bearing the HGW Marks:



*See* **Exhibit G**, Photographs of Defendant's hang tags.

57.    Moreover, Defendant has also incorporated the HGW Marks into its social media posts:



*See* **Exhibit H**, Fashion Nova Instagram Post.

58.    HGW has also discovered numerous social media posts by Defendant's Paid Partners who have posted similar infringing content on social media:



*See* **Exhibit I**, Compilation of Exemplary Screenshots from Defendant Fashion Nova's Paid Partners' Social Media.

59.    Upon information and belief, Defendant's social media campaign – on its own social media profiles and in conjunction with its Paid Partners – is a deliberate effort to trade off HGW's brand and goodwill, as built and showcased by the HGW Marks, to sell the Infringing Products.

60.    Upon information and belief, not only will consumers be confused by Fashion Nova's deliberate effort to trade off HGW's brand and goodwill, but HGW's own current and potential collaborative partners are also disenfranchised to partner with HGW because of Fashion Nova's actions.

61.    For example, a large, direct competitor of Fashion Nova has collaborated with HGW in the past. This Fashion Nova competitor and HGW were in late-stage discussions for a new, full-year collaboration. Recently, the Fashion Nova competitor pulled back from the full-year collaboration with HGW.

62.    On information and belief, the Fashion Nova competitor pulled back from the full-year collaboration with HGW because of Fashion Nova's infringement.

63.    On information and belief, Fashion Nova has multiple country-specific e-commerce websites and other sales platforms for the United States and other countries around the world. Fashion Nova has been using the HGW Marks and appropriating the HGW brand on their United States website and its other websites for other countries, including several countries where HGW has international protection on the HGW Marks.

64.    Fashion Nova's domestic and global use of the HGW Marks without authorization reveals the extent of its scheme to profit off the valuable goodwill HGW has in its HGW Marks, which Fashion Nova, on information and belief, recognizes and exploits.

65.    On information and belief, Fashion Nova has sold a significant number of products on its website, using the HGW Marks and brand name.

66.     On information and belief, Fashion Nova's total sales are in the billions of dollars.

67.     On October 20, 2025, HGW, through counsel, sent a cease-and-desist letter to Fashion Nova regarding its unlawful use of the HGW Marks and HGW's brand name. A true and correct copy of this letter, is attached to this Complaint as **Exhibit J**.

68.     Fashion Nova's unlawful use of the HGW Marks and HGW's brand name, in the United States and abroad, directly harms HGW's present and future economic advantage, particularly with brands HGW has collaborated with or intends to collaborate with in the future.

69.     Unless Fashion Nova's infringement stops, HGW will continue to suffer harm from the unlicensed and unauthorized use of the HGW Marks and HGW's brand name, goodwill, and reputation.

<u>**FIRST CAUSE OF ACTION**</u>
**TRADEMARK INFRINGEMENT**
**UNDER 15 U.S.C. § 1117**

70.     Plaintiff repeats, re-alleges and hereby incorporates by reference, as though specifically pleaded herein, the allegations contained in the paragraphs above.

71.     Upon information and belief, Defendant has used, in connection with the sale, offering for sale, distribution, or advertising the Infringing Products, words and symbols that infringe upon the HGW Trademarks online, in stores, and on hang tags attached to the Infringing Products.

72.     These acts of trademark infringement have been committed with the intent to cause confusion, mistake, or deception, and are in violation of 15 U.S.C. § 1114.

73.    Defendant's willfulness is displayed not only in the infringements, but in its decisions to persist in infringements after receiving notice and communication from Ms. Lind, the President of HGW and creator of the HGW Marks and brand.

74.    As a direct and proximate result of Defendant's conduct, Plaintiff is entitled to recover up to treble the amount of Defendant's unlawful profits and Plaintiff's damages and an award of attorneys' fees under 15 U.S.C. § 1117(a).

75.    Plaintiff is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a) that requires Defendant to stop use of the Infringing Products, and any other mark or design similar to the HGW Trademarks.

## <u>SECOND CAUSE OF ACTION</u>
## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125(a)

76.    Plaintiff repeats, re-alleges and hereby incorporates by reference, as though specifically pleaded herein, the allegations contained in the paragraphs above.

77.    Defendant's Infringing Products include hang tags that bear Plaintiff's registered the HGW Marks, as well as Plaintiff's trade name (Hot Girl Walk), in connection with sales of apparel and related goods that are of the same general nature and type as those that Plaintiff has partnered with other apparel companies and licensed its HGW Marks to sell similar products to consumers, and in the same geographic area as Plaintiff's licensed partners, without authorization from Plaintiff.

78.    Defendant's unauthorized uses of the HGW Marks and Plaintiff's trade name are likely to cause confusion to the general purchasing public.

79.    By using the HGW Marks, as well as Plaintiff's trade name, in commerce in connection with sales of apparel and related goods that are of the same general nature and type as those that Plaintiff's licensed partners have sold to consumers, and in the same geographic area as Plaintiff's licensed partners,

Defendant misrepresents and falsely advertises to the general public the source, sponsorship, affiliation, and/or endorsement of its goods and services.

80.   Defendant's unlawful, unauthorized, and unlicensed offers for sale and sales of apparel and related goods and services in connection with the HGW Marks, as well as Plaintiff's trade name, create express and implied misrepresentations that those goods and services are authorized, sponsored, affiliated, endorsed, and/or approved for sale by Plaintiff, all to Defendant's profit and Plaintiff's and consumers' great damage and injury.

81.   Defendant's aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendant's use of the HGW Marks, as well as Plaintiff's trade name, in connection with the Defendant's sales of apparel and related goods in commerce, in the same geographic region as Plaintiff, constitutes trademark infringement, a false designation of origin, false advertising, and unfair competition.

82.   Plaintiff has been irreparably harmed by Defendant's misconduct.

83.   Plaintiff has no adequate remedy at law and if Defendant's activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its business, goodwill and reputation.

84.   As a result of Defendant's activities, Plaintiff has been damaged in an amount to be determined at trial, including but not limited to the attorneys' fees and costs of this action.

85.   Plaintiff is entitled to recover its actual damages and Defendant's profits realized from sales of goods and services in connection with the HGW Marks as well as its unauthorized uses of Plaintiff's trade name.

86.   Defendant's infringement of the HGW Marks and trade name were at all relevant times, and continue to be intentional, willful, malicious, and with a reckless disregard for Plaintiff's rights.

87.    Defendant's continued willful violation of Plaintiff's rights with full knowledge of said rights entitles Plaintiff to recover enhanced damages and reasonable attorneys' fees.

### THIRD CAUSE OF ACTION
### TRADEMARK DILUTION
### UNDER 15 U.S.C. § 1125(c)

88.    Plaintiff repeats, re-alleges and hereby incorporates by reference, as though specifically pleaded herein, the allegations contained in the paragraphs above.

89.    Plaintiff has built up valuable goodwill in its registered the HGW Marks.

90.    With full knowledge of Plaintiff's prior established rights and strong goodwill associated with the HGW Marks, Defendant has traded, and continues to trade, upon the goodwill associated therewith, misleading the public as to the sources, sponsorship and affiliation of Defendant's and Plaintiff's respective goods and services.

91.    Defendant's conduct causes confusion and misleads and deceives the public as to the source, sponsorship, and affiliation of Defendant's goods and services, enables Defendant to pass off its goods and services as authorized by Plaintiff, and falsely suggests a connection between Defendant and Plaintiff. Unless restrained by this Court, Defendant's unlawful conduct will continue, in violation of the common law of the State of California and to the detriment of Plaintiff and to the unjust enrichment of Defendant.

92.    Plaintiff has no adequate remedy at law and, if Defendant's activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation. Plaintiff is therefore entitled to injunctive relief, enjoining Defendant from continuing to use the HGW Marks as well as any other confusingly

similar marks and/or terms, in connection with sales of apparel and related goods and services.

93.    Plaintiff is entitled to recover its actual damage and Defendant's profits realized from sales of apparel and related goods and services in connection with the HGW Marks.

94.    Furthermore, Defendant's continued willful violation of Plaintiff's rights with full knowledge of said rights entitles Plaintiff to recover enhanced damages and reasonable attorneys' fees.

95.    At all relevant times, Defendant's misconduct was intentional, willful, oppressive, fraudulent and malicious, such that punitive damages are warranted.

## FOURTH CAUSE OF ACTION
## COMMON LAW INFRINGEMENT AND UNFAIR COMPETITION

96.    Plaintiff repeats, re-alleges and hereby incorporates by reference, as though specifically pleaded herein, the allegations contained in the paragraphs above.

97.    Plaintiff owns valid and protectable rights in the HGW Marks at common law.

98.    Defendant's conduct is likely to cause confusion, to cause mistake, or to deceive as to the source of goods and services offered by Defendant, or as to affiliation, connection, association, sponsorship, or approval of such goods and services, and constitutes infringement of the HGW Marks at common law.

99.    Defendant infringed the HGW Marks with knowledge and intent to cause confusion, mistake, or deception.

100.    As a direct and proximate result of Defendant's activities, Plaintiff has suffered substantial damage.

101.    Unless restrained and enjoined, Defendant's conduct will further impair the value of the HGW Marks and Plaintiff's business reputation and goodwill. Plaintiff has no adequate remedy at law.

102.    Plaintiff is entitled to monetary damages and injunctive relief prohibiting Defendant from using the Infringing Marks, and any other mark or design similar to the HGW Marks.

103.    Without injunctive relief, Plaintiff has no means by which to control the continuing injury to its reputation and goodwill or that of its HGW Marks. Plaintiff has been and will continue to be irreparably harmed. No amount of money damages can adequately compensate Plaintiff if it loses the ability to control its marks.

104.    Because Defendant's actions have been committed willfully, maliciously, and intentionally, Plaintiff is entitled to recover reasonable attorneys' fees and compensatory and punitive damages.

**<u>FIFTH CAUSE OF ACTION</u>**
**UNFAIR COMPETITION**
**UNDER CAL. BUS. & PROF. CODE § 17200**

105.    Plaintiff repeats, re-alleges and hereby incorporates by reference, as though specifically pleaded herein, the allegations contained in the paragraphs above.

106.    California Business and Professional Code section 17200, *et seq.* (the "UCL") prohibits unfair competition, that is, any unlawful, unfair or fraudulent business act or practice.

107.    Defendant has committed acts of unfair competition as defined by the UCL. The aforesaid acts by Defendant are likely to cause injury to Plaintiff's reputation and result in Defendant unfairly competing with Plaintiff in violation of the UCL.

108.   Defendant's actions as alleged above violate the "unfair" prong of the UCL because (a) the utility of such actions is outweighed by the gravity of the harm they cause to Plaintiff; (b) such actions are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers; and (c) such actions constitute incipient violations of state and federal antitrust laws.

109.   Defendant's actions as alleged above violate the "fraudulent" prong of the UCL because they are likely to mislead and confuse a statistically significant percentage of reasonable consumers.

110.   Defendant's actions as alleged above violate the "unlawful" prong of the UCL because those same actions also constitute violations of the state and federal statutes set forth in the Counts above. Defendant's violation of each of those statutes represents an independently actionable unlawful business practice in violation of the UCL.

111.   The UCL provides that the Court may restore to any person in interest any money or property which may have been acquired by means of unfair competition.

112.   As a direct and proximate result of the aforementioned acts by Defendant, Plaintiff has suffered a monetary loss in an amount to be proven at trial. Accordingly, Plaintiff is entitled to restitution and/or disgorgement of profits realized by Defendant because of its unlawful acts.

113.   Defendant's conduct has injured Plaintiff and unless enjoined, will continue to cause great, immediate and irreparable injury to Plaintiff.

114.   Plaintiff is without an adequate remedy at law, and is therefore entitled to injunctive relief, equitable relief, and an order for restitutionary disgorgement of all of Defendant's ill-gotten gains pursuant to California Business and Professions Code § 17203. If Defendant's activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation. Plaintiff is therefore

entitled to injunctive relief, enjoining Defendant from continuing to use the HGW Marks and Plaintiff's trade name, as well as any other confusingly similar marks and/or terms, in connection with sales of apparel and related goods and services.

115.    Plaintiff is entitled to recover its actual damages and Defendant's profits realized from sales of apparel and related goods and services in connection with the HGW Marks.

116.    Furthermore, Defendant's continued willful violation of Plaintiff's rights with full knowledge of said rights entitles Plaintiff to recover enhanced damages and reasonable attorneys' fees.

117.    At all relevant times, Defendant's misconduct was intentional, willful, oppressive, fraudulent, and malicious, such that punitive damages are warranted.

## SIXTH CAUSE OF ACTION
## INTENTIONAL INTERFERENCE WITH ECONOMIC ADVANTAGE

118.    Plaintiff repeats, re-alleges and hereby incorporates by reference, as though specifically pleaded herein, the allegations contained in the paragraphs above.

119.    Defendant's blatant, willful infringement, of the HGW Marks hurts Plaintiff's current and potential collaborative efforts, particularly those with Defendant's competitors.

120.    Plaintiff collaborates with Defendant's competitors, such as lululemon, ASOS, Cider, Reebok, Halara, and ECCO. Plaintiff licenses the HGW Marks to its brand partners as part of these collaborative agreements.

121.    On information and belief, Defendant's infringement has disrupted Plaintiff's planned collaborations.

122.    For example, Halara, Defendant's direct competitor, has collaborated with HGW in the past. Halara and HGW had late-stage discussions for a new, full-

year collaboration. Recently, a large, direct Fashion Nova competitor pulled back from the full-year collaboration with HGW.

123. On information and belief, this large, direct Fashion Nova competitor pulled back from the full-year collaboration with HGW because of Defendant's infringement.

124. By Defendant's knowingly and intentionally proceeding to usurp, use, destroy, dilute, and mislead through the use of the HGW Marks and Plaintiff's trade name, Defendant knowingly and intentionally disrupted the economic relationship between Plaintiff and its current and potential collaborative partners.

125. Defendant's actions harm Plaintiff by impeding and disrupting Plaintiff's ability to maximize the economic benefits resulting from its collaborations. Given Defendant's dilution and injury to the HGW Marks, that interference and harm to Plaintiff's economic relationship with current and future licensees may endure.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff HGW demands judgment as follows:

1. That Fashion Nova, its officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through or under them be preliminarily enjoined and restrained, at first during the pendency of this action and, thereafter, permanently:

        a) from using in any manner marks confusingly similar to the HGW Marks, as well as Plaintiff's trade name, or any other confusingly similar marks and/or terms in connection with the advertising, offering for sale or sale of any apparel or related goods and services;

b) from passing off, inducing, or enabling others to sell or pass off any apparel or related good or service as affiliated with, authorized or approved by Plaintiff;

c) from committing any acts calculated to cause consumers to believe that Defendant's goods or services are those sold under the control and supervision of Plaintiff, or are sponsored, affiliated, endorsed, or approved by, or connected with, or guaranteed by, or produced under the control and supervision of Plaintiff;

d) from further infringing the HGW Marks and trade name, and damaging Plaintiff's goodwill; and

e) from otherwise competing unfairly with Plaintiff.

2. That Fashion Nova, within thirty (30) days after service of judgment with notice of entry thereof upon it, be required to file with the Court and serve upon HGW a written report under oath with penalty of perjury setting forth in detail the manner in which Fashion Nova has complied with paragraph 1 above.

3. That Fashion Nova accounts for and pays over to HGW the profits realized by Fashion Nova by reason of its unlawful acts herein alleged, and that the amount of damages from its infringements of the HGW Marks and trade name be increased by a sum not exceeding three times the amount thereof as provided by law.

4. That HGW be awarded damages in an amount to be determined at trial for Fashion Nova's willful infringements of the HGW Marks and trade name.

5. That HGW be awarded punitive damages.

6. That HGW be awarded reasonable attorneys' fees and costs.

7. That Fashion Nova be ordered to disgorge all of its ill-gotten gains pursuant to California Business and Professions Code § 17203.

8. For all such further relief as the Court finds proper.

COMPLAINT                    27

DATED:      November 10, 2025

Respectfully Submitted,

**DICKINSON WRIGHT PLLC**

*/s/ John L. Krieger*
John L. Krieger (CA Bar No. 212325)
Email: jkrieger@dickinson-wright.com
3883 Howard Hughes Parkway, Suite 800
Las Vegas, NV 89169
Tel: (702) 550-4400
Fax: (844) 670-6009

*Attorneys for Plaintiff*
*Hot Girl Walk LLC*