LUCIA E. COYOCA (SBN 128314)
  lec@msk.com
ELAINE K. KIM (SBN 242066)
  ekk@msk.com
VALENTINE A. SHALAMITSKI (SBN 236061)
  vas@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA  90067-3120
Telephone:   (310) 312-2000
Facsimile:   (310) 312-3100

Attorneys for Defendant,
Fashion Nova, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOT GIRL WALK LLC, a Delaware limited liability company,<br><br>          Plaintiff,<br><br>     v.<br><br>FASHION NOVA, LLC, a California limited liability company,<br><br>          Defendant. | Case No. 2:25-cv-10800-JFW(DSRx)<br><br>Judge:    Hon. John F. Walter<br><br>**FASHION NOVA, LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND REQUEST FOR ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**<br><br>[Declarations of Amanda Watter and Elaine K. Kim and Evidentiary Objections Filed Concurrently Herewith]<br><br>Time:        N/A<br>Date:        N/A[1] |

---

[1]  The Court construed Plaintiff's Motion as "an Ex Parte Application for a Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue" ("Application").  Dkt. 15.

Mitchell
Silberberg &
Knupp LLP

---

**FASHION NOVA'S OPPOSITION TO EX PARTE TRO APPLICATION**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................9

II.     RELEVANT BACKGROUND FACTS ..........................................................9

III.    HGW CANNOT SHOW THAT IMMINENT IRREPARABLE HARM WILL RESULT IF A TRO IS NOT GRANTED ........................................10

    A.      HGW Is Not Likely To Succeed On The Merits ...............................11

    B.      HGW's Delay Negates Any Purported Emergency.............................11

    C.      HGW Cannot Show Any Prospective Harm, Because Fashion Nova Removed The "Hot Girl Walk" Terms On Its Website ............12

    D.      HGW Has Failed To Show Any Actual Past Harm............................15

IV.     HGW CANNOT SHOW LIKELY SUCCESS ON THE MERITS.............18

    A.      HGW Has Not Shown Likely Consumer Confusion Under the Nominative Fair Use Analysis ..........................................................19

    B.      HGW Has Not Shown Likely Success Under *Sleekcraft* ...................23

        1.      "Hot Girl Walk" Is Weak .........................................................23

        2.      There Is No Proximity of Goods ..............................................26

        3.      HGW's Mark and Fashion Nova's Use Differ.........................27

        4.      There Is No Actual Consumer Confusion ................................28

        5.      The Parties Use Disparate Marketing Channels.......................29

        6.      Purchasers Are Likely to Exercise a High Degree of Care ......29

        7.      Fashion Nova's Nominative Fair Use Cuts Against Confusion..................................................................................30

        8.      HGW Has Not Shown Any Likely Expansion.........................31

        9.      HGW Has Not Provided Any Survey Evidence.......................31

V.      THE EQUITIES AND PUBLIC INTEREST WEIGH AGAINST HGW....32

Mitchell Silberberg & Knupp LLP

2

# TABLE OF CONTENTS
(continued)

**Page**

VI.     HGW's TRO IS IMPROPERLY VAGUE AND OVERBROAD................32

VII.    CONCLUSION .......................................................................................33

Mitchell
Silberberg &
Knupp LLP

**FASHION NOVA'S OPPOSITION TO EX PARTE TRO APPLICATION**

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*AMF Inc. v. Sleekcraft Boats,*
   599 F.2d 341 (9th Cir. 1979) ........................................................ 19, 20, 23, 31, 32

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.,*
   174 F.3d 1036 (9th Cir. 1999) ........................................................................... 26

*Cairns v. Franklin Mint Co.,*
   107 F. Supp. 2d 1212 (C.D. Cal. 2000) ............................................................. 30

*Cairns v. Franklin Mint Co.,*
   292 F.3d 1139 (9th Cir. 2002) ..................................................................... 19, 21

*Caryn Mandabach Prods. Ltd. v. Sadlers Brewhouse Ltd.,*
   2021 WL 2497928 (C.D. Cal. May 19, 2021) ........................................ 29, 31, 32

*CLS Worldwide Servs., LLC v. Cartier Executive Limo Serv.,*
   2006 WL 8563341 (C.D. Cal. June 15, 2006) .................................................... 31

*CSC Brands LP v. Herdez Corp.,*
   191 F. Supp. 2d 1145 (E.D. Cal. 2001) ............................................................. 33

*Dahl v. Swift Distrib., Inc.,*
   2010 WL 1458957 (C.D. Cal. Apr. 1, 2010) ...................................................... 12

*Devasahayam v. DMB Cap. Grp.,*
   2017 WL 6547897 (S.D. Cal. Dec. 20, 2017) .................................................... 12

*E! Ent. Television, Inc. v. Ent. One GP Ltd.,*
   2009 WL 10673224 (C.D. Cal. May 19, 2009), *aff'd sub nom. EA Ent.*
   *Television, Inc. v. Ent. One GP Ltd.,* 363 F. App'x 510 (9th Cir. 2010) ............ 31

*Edge Games, Inc. v. Elec. Arts, Inc.,*
   745 F. Supp. 2d 1101 (N.D. Cal. 2010) ............................................................. 28

*Equinox Hotel Mgmt., Inc. v. Equinox Holdings, Inc.,*
   2018 WL 659105 (N.D. Cal. Feb. 1, 2018) ........................................... 28, 31, 32

*Everything Yogurt Brands, LLC v. Rollo,*
   2024 WL 6881691 (C.D. Cal. Jan. 3, 2024) ....................................................... 11

Mitchell
Silberberg &
Knupp LLP

4

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Fizz Soc. Corp. v. Maplebear, Inc.*,
791 F. Supp. 3d 990 (N.D. Cal. 2025)................................................................11

*Glow Indus., Inc. v. Lopez*,
273 F. Supp. 2d 1095 (C.D. Cal. 2003)..............................................................29

*Good Meat v. GOOD Meat, Inc.*,
716 F. Supp. 3d 783 (N.D. Cal. 2024)................................10, 23, 26, 28, 31, 32

*Great W. Air, LLC v. Cirrus Design Corp.*,
649 F. Supp. 3d 965 (D. Nev. 2023), *aff'd*, No. 23-15157, 2024 WL
5134351 (9th Cir. Dec. 17, 2024)......................................................................24

*Haldiram India (P) LTD v. Punjab Trading, Inc.*,
2025 WL 3158082 (W.D. Wash. Nov. 12, 2025) ..............................................32

*Harman Int'l Indus., Inc. v. Jem Access., Inc.*,
668 F. Supp. 3d 1025 (C.D. Cal. 2023)..............................................................25

*Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*,
736 F.3d 1239 (9th Cir. 2013) ...........................................................................16

*Humbled Hustle, Inc. v. Humble Hustler Masters, Inc.*,
2023 WL 4217014 (C.D. Cal. Feb. 27, 2023).............................................. 12, 13

*Innospan Corp. v. Intuit, Inc.*,
2010 WL 5157157 (N.D. Cal. Dec. 3, 2010) .....................................................14

*JIPC Mgmt., Inc. v. Incredible Pizza Co.*,
2009 WL 8591607 (C.D. Cal. July 14, 2009) ....................................................28

*Joshua Tree Brewery, LLC v. Balance Rock Brewing, Inc.*,
2020 WL 8474576 (C.D. Cal. Mar. 6, 2020) .....................................................10

*Kahala Franchising, LLC v. Real Faith, LLC*,
2022 WL 1605377 (C.D. Cal. May 20, 2022).....................................................13

*Lamps Plus, Inc. v. Lamps Pro, LLC*,
2024 WL 4556963 (C.D. Cal. Oct. 23, 2024) ....................................................32

Mitchell
Silberberg &
Knupp LLP

**FASHION NOVA'S OPPOSITION TO EX PARTE TRO APPLICATION**

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Lee v. Haj*,
   2016 WL 8738428 (E.D. Cal. Feb. 22, 2016) ........................................................ 12

*LegalForce RAPC Worldwide, PC v. LegalForce, Inc.*,
   124 F.4th 1122 (9th Cir. 2024) ............................................................................. 24

*Lepow Int'l LLC v. Fang*,
   2014 WL 12580228 (C.D. Cal. May 16, 2014) ............................................... 32, 33

*M2 Software, Inc. v. Madacy Ent.*,
   421 F.3d 1073 (9th Cir. 2005) .............................................................................. 31

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997) ............................................................................................. 18

*McCormack v. Hiedeman*,
   694 F.3d 1004 (9th Cir. 2012) .............................................................................. 32

*Michael Caruso and Co., Inc. v. Estefan Enters., Inc.*,
   994 F. Supp. 1454 (S.D. Fla. 1998), *aff'd*, 166 F.3d 353 (11th Cir. 1998) ........ 27

*Miss Glob. Org. LLC v. Mak*,
   2018 WL 8058845 (C.D. Cal. Dec. 14, 2018) ....................................................... 33

*Miss World (UK) Ltd. v. Mrs. Am. Pageants, Inc.*,
   856 F.2d 1445, 1449 (9th Cir. 1988) .................................................................... 25

*Moroccanoil, Inc. v. Zotos Int'l, Inc.*,
   230 F. Supp. 3d 1161 (C.D. Cal. 2017) ................................................................. 33

*Mountain Mike's Pizza, LLC v. SV Adventures, Inc.*,
   2021 WL 6136178 (E.D. Cal. Dec. 29, 2021) ....................................................... 13

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
   638 F.3d (9th Cir. 2011) ....................................................................................... 29

*Neurovision Med. Prods. Inc. v. NuVasive, Inc.*,
   494 F. App'x 749 (9th Cir. 2012) ......................................................................... 26

*New Kids on the Block v. News Am. Pub., Inc.*,
   971 F.2d 302 (9th Cir. 1992) ..................................................................... 20, 21, 22

Mitchell
Silberberg &
Knupp LLP

6

**FASHION NOVA'S OPPOSITION TO EX PARTE TRO APPLICATION**

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*New Milani Grp., Inc. v. J.T. Bella, LLC*,
 2013 WL 12116579 (C.D. Cal. July 22, 2013) ......................................24, 28, 29

*Nordstrom, Inc. v. 7525419 Canada Inc.*,
 2012 WL 12507605 (W.D. Wash. Dec. 27, 2012)..............................................29

*Ontel Prods. Corp. v. Brownstone Res., LLC*,
 2021 WL 6103538 (C.D. Cal. Aug. 20, 2021) ....................................................17

*Perez v. City of Petaluma*,
 2021 WL 3934327 (N.D. Cal. Aug. 13, 2021)....................................................12

*Playboy Enters., Inc. v. Welles*,
 279 F.3d 796 (9th Cir. 2002)......................................................................20, 22

*Playmakers, LLC v. ESPN, Inc.*,
 297 F. Supp. 2d 1277 (W.D. Wash. 2003), *aff'd*, 376 F.3d 894 (9th Cir.
 2004) .......................................................................................................27, 28, 30

*Pom Wonderful LLC v. Pur Beverages LLC*,
 2015 WL 10433693 (C.D. Cal. Aug. 6, 2015) ....................................................17

*Puma SE v. Forever 21, Inc.*,
 2017 WL 4771003 (C.D. Cal. June 2, 2017)......................................................17

*Punchbowl, Inc. v. AJ Press LLC*,
 2024 WL 4005220 (C.D. Cal. Aug. 22, 2024) ............................................25, 26

*Self-Realization Fellowship Church v. Ananda Church of Self-Realization*,
 59 F.3d 902 (9th Cir. 1995).................................................................................24

*Summit Ice Melt Sys., Inc. v. HotEdge, LLC*,
 2025 WL 305202 (D. Nev. Jan. 27, 2025), *aff'd*, No. 25-914, 2025 WL
 2911139 (9th Cir. Oct. 14, 2025) ................................................................24, 29

*Thrive Natural Care, Inc. v. Le Vel Brands*,
 LLC, 2021 WL 2548688 (C.D. Cal. Apr. 28, 2021) .........................................15

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
 610 F.3d 1171 (9th Cir. 2010)......................................................19, 20, 22, 29

Mitchell
Silberberg &
Knupp LLP

7

**FASHION NOVA'S OPPOSITION TO EX PARTE TRO APPLICATION**

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*TPW Mgmt., LLC v. Yelp Inc.*,
  2016 WL 6216879 (N.D. Cal. Oct. 25, 2016)............................17, 23, 24, 27, 30

*UnifySCC v. Cody*,
  2022 WL 686310 (N.D. Cal. Mar. 8, 2022).......................................................9, 12

*Walter v. Mattel, Inc.*,
  210 F.3d 1108 (9th Cir. 2000)............................................................................28

*WCVB–TV v. Boston Athletic Ass'n*,
  926 F.2d 42 (1st Cir. 1991)................................................................................21

*Zamfir v. Casperlabs, LLC*,
  528 F. Supp. 3d 1136 (S.D. Cal. 2021)...............................................................10

## STATUTES

15 U.S.C. § 1125(c)(1) .........................................................................................18

## OTHER AUTHORITIES

J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS & UNFAIR
  COMPETITION § 11:85 (5th ed. Dec. 2025 Update) ...........................................25

Mitchell
Silberberg &
Knupp LLP

8

**FASHION NOVA'S OPPOSITION TO EX PARTE TRO APPLICATION**

## I.     INTRODUCTION

Plaintiff Hot Girl Walk LLC ("HGW") has not and cannot establish exigent circumstances to justify issuance of a Temporary Restraining Order ("TRO"). That alone is sufficient grounds to deny HGW's Application. *UnifySCC v. Cody,* 2022 WL 686310, at *1 (N.D. Cal. Mar. 8, 2022) (TROs are "reserved for 'emergency situations,'" quoting *Whirlpool Corp. v. Marshall,* 445 U.S. 1, 20 n.33 (1980)). Moreover, HGW concedes it knew about Defendant Fashion Nova, LLC's ("Fashion Nova") reference to the phrase "Hot Girl Walk" on Fashion Nova's website by at least mid-October, but delayed for a month before filing its Application. "Parties facing the threat of immediate and irreparable harm generally seek a restraining order as quickly as possible." *Id.* Also, HGW cannot show it faces any imminent or irreparable harm, because Fashion Nova has removed the references to "Hot Girl Walk" on its website. Because there is no emergency or risk of imminent, irreparable injury, and HGW delayed in seeking a TRO, this Application should be denied. But even if the Court somehow finds there is a risk of imminent irreparable injury and HGW's delay in filing was justified, HGW has not established likely success on the merits of its claims, which is a mandatory prerequisite before a TRO may issue. Thus, this Application must be denied.

## II.    RELEVANT BACKGROUND FACTS

Fashion Nova is a Los Angeles-based leading fashion retailer known for delivering affordable, trend-driven apparel to customers quickly. Declaration of Amanda Watter ("Watter Decl."), ¶ 2. Since its founding in 2006, Fashion Nova has built a globally recognized brand. The company launched its online website store in 2013, expanding its reach to serve a broad, international customer base, becoming in about 2018 the number one most searched fashion brand on the internet. Fashion Nova is essentially an online retailer; virtually all of its sales

Mitchell
Silberberg &
Knupp LLP

9

**FASHION NOVA'S OPPOSITION TO EX PARTE TRO APPLICATION**

occur over the Internet, though Fashion Nova also has five brick-and-mortar stores, all located in Southern California. *Id.*

HGW alleges that its president, Amelia "Mia" Lind, conceived a fitness concept of women taking walks, while focusing their thoughts on gratitude, goals, and self-confidence, *i.e.*, being a "hot girl," and that this concept subsequently went viral. Dkt. 5, ¶¶ 8-9, 13. HGW claims that in April 2024, a then-Fashion Nova employee, Hailey Ordanez, approached HGW about a potential collaboration with Fashion Nova, but Fashion Nova ultimately did not proceed. *Id.*, ¶ 37 & Ex. B. HGW asserts that Fashion Nova took advantage of (unidentified) information learned during these communications and purportedly infringed its trademarks by: (1) selling seven products that had the words "Hot Girl Walk" within the style names for these products; and (2) creating two "collections" of fitness wear on the website with the words "Hot Girl Walk" and "Plus Size Hot Girl Walk." *Id.*, ¶¶ 50-55. On November 10, 2025, HGW filed this Action, alleging claims for Lanham Act and common law trademark infringement, unfair competition, and dilution. Dkt. 1.

## III.   HGW CANNOT SHOW THAT IMMINENT IRREPARABLE HARM WILL RESULT IF A TRO IS NOT GRANTED

To prevail, HGW must show it is likely to suffer irreparable harm if the TRO is not granted. *Good Meat v. GOOD Meat, Inc.*, 716 F. Supp. 3d 783, 804 (N.D. Cal. 2024); *see also Joshua Tree Brewery, LLC v. Balance Rock Brewing, Inc.*, 2020 WL 8474576, at *1 (C.D. Cal. Mar. 6, 2020) (applying same standard in denying TRO). The harm must be "real, imminent, and significant, not just speculative or potential." *Good Meat*, 716 F. Supp. 3d at 804. Further, HGW "must present case-specific evidence of irreparable harm, rather than relying on generic factors that are present whenever a trademark is infringed." *Zamfir v. Casperlabs, LLC*, 528 F. Supp. 3d 1136, 1150 (S.D. Cal. 2021) (denying TRO) (quoting *Clark Material Handling Co. v. Zoomlion Heavy Indus. Sci. & Tech. Co.*, 2018 WL 6252463, at *1-2 (C.D. Cal. Oct. 11, 2018)). Here, HGW cannot show

Mitchell
Silberberg &
Knupp LLP

**FASHION NOVA'S OPPOSITION TO EX PARTE TRO APPLICATION**

any harm, let alone real, imminent, and irreparable harm.

Instead, HGW maintains it is entitled to a presumption of irreparable harm, concluding (without citation to any evidence) that, "[a]bsent a TRO, HGW will be immediately and irreparably harmed by Fashion Nova's advertisement, offers for sale, sale, and distribution of its infringing products throughout the United States." Memo. at 12:18-26. HGW, however, is not entitled to a presumption of irreparable harm for the following four separate reasons:

1.    HGW has not established that it is likely to succeed on the merits;

2.    Any argument that the presumption applies is negated by HGW's delay, for at least a month, in seeking a TRO;

3.    Even though Fashion Nova's references to the "Hot Girl Walk" were nominative fair use and not likely to cause consumer confusion, Fashion Nova has ceased using the phrase on its website or product titles pending this litigation; and

4.    HGW has not been able to establish it suffered any actual harm, despite HGW's assertion that Fashion Nova has been using the phrase for years.

### A.    HGW Is Not Likely To Succeed On The Merits

As addressed in detail below in Section IV, HGW has not shown it is likely to succeed on the merits of its claims. Thus, no presumption of irreparable harm can apply and a TRO is not warranted. *See, e.g.*, *Fizz Soc. Corp. v. Maplebear, Inc.*, 791 F. Supp. 3d 990, 1017-18 (N.D. Cal. 2025) (where the plaintiff fails to establish likelihood of success, no entitlement to presumption under the Trademark Modernization Act of 2020); *Everything Yogurt Brands, LLC v. Rollo*, 2024 WL 6881691, at *4 (C.D. Cal. Jan. 3, 2024) (same).

### B.    HGW's Delay Negates Any Purported Emergency

Even assuming a rebuttable presumption of irreparable harm, it is rebutted here because HGW unduly delayed in filing its TRO Application. "Delays of one month or more are common grounds for denying motions for temporary restraining

Mitchell
Silberberg &
Knupp LLP

**FASHION NOVA'S OPPOSITION TO EX PARTE TRO APPLICATION**

orders, and some courts deny temporary relief based on delays of as little as ten days." *UnifySCC*, 2022 WL 686310, at \*1 (collecting cases).

Here, HGW delayed its TRO Application by at least a month. It concedes it learned of Fashion Nova's alleged infringement *prior* to October 20, 2025. *See* Dkt. 9-7 (HGW's cease and desist letter: "It has recently come to HGW's attention…."). HGW failed to file the Application until a month later on November 18, 2025. Dkt. 9. This delay negates any claimed emergency. *See Perez v. City of Petaluma*, 2021 WL 3934327, at \*1 (N.D. Cal. Aug. 13, 2021) (denying TRO where plaintiff waited "a full month"); *Devasahayam v. DMB Cap. Grp.*, 2017 WL 6547897, at \*4 (S.D. Cal. Dec. 20, 2017) (one-month delay was "reason enough to deny a TRO"); *Lee v. Haj*, 2016 WL 8738428, at \*1 (E.D. Cal. Feb. 22, 2016) (same); *Dahl v. Swift Distrib., Inc.*, 2010 WL 1458957, at \*4 (C.D. Cal. Apr. 1, 2010) (denying TRO; noting 18-day delay in seeking TRO "implies a lack of urgency and irreparable harm").

### C.    HGW Cannot Show Any Prospective Harm, Because Fashion Nova Removed The "Hot Girl Walk" Terms On Its Website

HGW claims harm "is particularly imminent, as Black Friday and Cyber Monday—two of the biggest retail sales events of the year—are fast approaching...." Memo. at 11:4-8. But that argument can be rebutted where "Defendants submit evidence suggesting they are cooperating with Plaintiffs' requests to stop using Plaintiffs' trademarks." *Humbled Hustle, Inc. v. Humble Hustler Masters, Inc.*, 2023 WL 4217014, at \*2 (C.D. Cal. Feb. 27, 2023) (TRO denied).

Here, although Fashion Nova denies that it infringed HGW's intellectual property rights, to avoid unnecessary litigation and without admitting fault or liability, Fashion Nova has removed the "Hot Girl Walk" and "Plus Size Hot Girl Walk" terms on its website. *See* Watter Decl., ¶¶ 7-10. As HGW concedes, following Fashion Nova's receipt of HGW's October 20, 2025 cease and desist letter (Dkt. 9-7), it made changes to its website. *See* Memo. at 10. On or about

Mitchell
Silberberg &
Knupp LLP

12

**FASHION NOVA'S OPPOSITION TO EX PARTE TRO APPLICATION**

October 31, 2025, Fashion Nova renamed the seven accused products that had "Hot Girl Walk" in the product title (*e.g.*, Hot Girl Walk Fold Over Pant Set, Hot Girl Walk Seamless Active Jacket), and, on or about November 11, 2025, Fashion Nova changed the corresponding product URLs.  Watter Decl., ¶ 8.[2]  On or about October 31, 2025, Fashion Nova also removed the reference to "Hot Girl Walk" that appeared on the accused webpage (*i.e.*, what HGW refers to as the "Hot Girl Walk" "collection," although none of the product titles uses that term).  *Id.*, ¶ 9.

HGW did not complain about the "Plus Size Hot Girl Walk" webpage in its October 20, 2025 letter (Dkt. 9-7), raising it for the first time when it filed this action (Dkt. 1).  Since then (completed as of November 23, 2025), Fashion Nova also removed the phrase "Plus Size Hot Girl Walk" on that webpage (again, what HGW refers to as the "Plus Size Hot Girl Walk" "collection," although none of the product title uses that term).  Watter Decl., ¶ 10.

Thus, HGW's claim that a TRO "is necessary to stop any further sales of Infringing Product" before Black Friday/Cyber Monday is simply not true.  *See Humbled Hustle, Inc.*, 2023 WL 4217014, at *2; *see also Mountain Mike's Pizza, LLC v. SV Adventures, Inc.*, 2021 WL 6136178, at *4 (E.D. Cal. Dec. 29, 2021) (denying TRO; "Plaintiff has not persuaded the Court that it is likely to suffer immediate, irreparable harm in the absence of emergency relief.  Even assuming there is a rebuttable presumption of irreparable harm, Defendants have submitted evidence indicating that they have ceased the alleged infringing conduct[.]"); *Kahala Franchising, LLC v. Real Faith, LLC*, 2022 WL 1605377, at *4 (C.D. Cal. May 20, 2022) (denying TRO; noting a "presumption is rebuttable, meaning that Defendants may, upon a proper showing, overcome it and demonstrate a lack of

---

[2]  HGW claims "Fashion Nova did not change or remove any URL page names that contain 'Hot Girl Walk'."  Memo. at 10:13-14.  Not true; the pages no longer exist.  *See* Watter Decl. ¶ 8.

**FASHION NOVA'S OPPOSITION TO EX PARTE TRO APPLICATION**

irreparable harm ....  Such a showing might consist of a demonstration that … the non-movant has ceased or will soon cease the [allegedly] infringing activities").[3]

HGW argues that, "Fashion Nova is already taking advantage of the HGW Marks in conjunction with early Black Friday Deals" (Memo. at 22:16-17, citing the declaration of Ms. Lind ("Lind Decl.") ¶ 80).  Also not true, and patently misleading.  Paragraph 80 of the Lind Declaration cites Exhibit H, which shows Fashion Nova's "Pre-Black Friday Deals" webpage.  The webpage as created by Fashion Nova does not actually use the words "Hot Girl Walk"; instead, the exhibit shows that HGW manually typed "hot girl walk" into the top left-hand corner search window under the "Redefine By" heading (circled in red in Lind Decl., ¶80).  That resulted in an AI tool generating multiple products to display.  *See* Watter Decl., ¶11.  However, ***none*** of the displayed products have the "Hot Girl Walk" term in their product titles.  The only reason "hot girl walk" appears in Exhibit H is because HGW or its lawyers typed it in.  *Id*.; *see also Innospan Corp. v. Intuit, Inc.*, 2010 WL 5157157 at *2-3 (N.D. Cal. Dec. 3, 2010) (denying PI based on speculative claims of customer confusion).

Similarly, HGW argues that, "a search of 'Hot Girl Walk' on Fashion Nova's website results in ten (10) pages showcasing 600 products."  Memo. at 10:14-15 (citing Lind Decl., ¶69).  Not only is Ms. Lind's statement untrue, it is also, once again, patently misleading.  If one were to manually type "hot girl walk" into the search window on Fashion Nova's website, the search result would display multiple products.  But, again, ***none*** would have the "Hot Girl Walk" or "Plus Size Hot Girl Walk" term in their product titles.  *See* Watter Decl., ¶ 12.  In fact, if one were to type the words "Central District of California" into the search window on

---

[3]  To the extent HGW argues social media influencers, whom HGW calls "Paid Partners," post the "Hot Girl Walk" term on their respective third-party sites (Memo. at 9:7-9, citing Lind Decl., ¶¶ 50-52), not only are Ms. Lind's speculative "on information and belief" pronouncements inadmissible, but social media influencers are not directed by Fashion Nova as to what exactly and where to post, least of all, the "Hot Girl Walk" term.  *See* Watter Decl., ¶ 14.

Fashion Nova's website, it would generate about 10 pages of products, but none would have the name of the Court in their title:

https://www.fashionnova.com/search?query=central+district+of+california&division=women.  *See* Watter Decl., ¶13.

### D.   HGW Has Failed To Show Any Actual Past Harm

HGW also argues Fashion Nova has offered for sale apparel products using the term "Hot Girl Walk" since as early as November 2023.  *See* Memo. at 8:24-9:2; Watter Decl., ¶ 6.  But HGW has provided *no* competent evidence of any actual harm to date.  *See Thrive Natural Care, Inc. v. Le Vel Brands, LLC*, 2021 WL 2548688, at *4 (C.D. Cal. Apr. 28, 2021) ("[T]he Court finds that Defendant has established that Plaintiff is not likely to suffer irreparable harm….  Defendant argues, and the Court agrees, that Plaintiff has not offered evidence of harm—especially significant where Defendant's products have already been on the market for nearly two years.").

HGW's only claim of any purported harm is entirely speculative: "[A] large, direct competitor of Fashion Nova has collaborated with HGW in the past.  This Fashion Nova competitor and HGW were recently in late-stage discussions for a new, full-year collaboration.  Unfortunately, *upon information and belief*, the Fashion Nova competitor pulled back from the full-year collaboration with HGW as a result of Fashion Nova's infringement of the HGW Marks because the brand did not want to partner with a brand that was working with its competitor."  Memo. at 9:26-10:5 (citing Lind Decl., ¶¶ 58-59) (emphasis added).  Not only is the statement inadmissible, HGW has provided no "information" to support Ms. Lind's self-serving supposition.

Indeed, HGW has not even identified the third party, or provided any statement made by that company.  In its original Complaint, HGW alleged that: "For example, Halara, Defendant's direct competitor, has collaborated with HGW in the past.  Halara and HGW had late-stage discussions for a new, full-year

collaboration. Recently, a large, direct Fashion Nova competitor pulled back from the full-year collaboration with HGW." Dkt. 1, ¶ 122. But in its First Amended Complaint, HGW backpedaled, deleting the Halara reference, and revising the allegation as follows (interlineation and additions supplied): "For example, ~~Halara,~~one of Defendant's large, direct ~~competitor,~~competitors has collaborated with HGW in the past. ~~Halara and~~ HGW had late-stage discussions for a new, full- year collaboration. Recently, a large, direct Fashion Nova competitor pulled back from the full-year collaboration with HGW." Dkt. 5, ¶ 122.

Further, HGW does not assert or provide any evidence that, if a TRO or injunction is issued, the unnamed "Fashion Nova competitor" will enter into the "full-year collaboration with HGW." At best, HGW is arguing solely about alleged *past* harm, having no actual connection to Fashion Nova's alleged conduct. This is woefully insufficient to establish the "immediate and irreparable" injury required for a TRO.

HGW's conclusory argument that "Fashion Nova's use of an Infringing Mark for similar, if not identical, products harms both HGW's reputation and goodwill." Memo. at 13:6-12 (citing authority that, "[e]vidence of loss of control over business reputation and damage to goodwill [may] constitute irreparable harm" (alterations in original)). However, HGW offers zero evidence that it and Fashion Nova offer similar or identical products, as discussed in Section IV, or any actual harm to its reputation or goodwill. HGW conclusorily asserts that "it appears" that Fashion Nova has a poor reputation. Memo. at 21:23-27.[4] That is insufficient to show irreparable harm. *See Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) (conclusory allegations of "loss of control over business reputation and damage to goodwill" that are "grounded in

---

[4] HGW has not provided *any actual evidence* that Fashion Nova "continues to market Infringing Products even when they are 'sold out' as a 'bait and switch' to get consumers to buy other products on the website" or *any actual evidence* supporting the one 2019 article about worker pay or supporting any connection to this lawsuit. *See* Memo. at 21:23-27 (citing Lind Decl., ¶¶ 73, 77).

**FASHION NOVA'S OPPOSITION TO EX PARTE TRO APPLICATION**

Mitchell Silberberg & Knupp LLP

platitudes rather than evidence" are not sufficient); *TPW Mgmt., LLC v. Yelp Inc.,* 2016 WL 6216879, at *11 (N.D. Cal. Oct. 25, 2016) (two articles critical of defendant "insufficient to demonstrate 'the immediate threatened injury,' which is a prerequisite for a preliminary injunction").[5]

Moreover, HGW's claim, and any presumption of irreparable harm, is rebutted by HGW's own evidence showing that, in 2024, it was thrilled at the prospect of potentially collaborating with Fashion Nova on an event, with HGW's president Mia Lind stating, I am "excited for this potential collaboration! Hot Girl Walk x Fashion Nova would be awesome…." Dkt. 9-6 (May 7, 2024 email).  It is only now—given that the COVID-19 "hot girl walk" trend has waned and HGW has embraced a litigation strategy—that HGW has done an about-face, arguing that "[a]s brands, HGW and Fashion Nova have nothing in common."  Memo. at 21:17.

HGW's past statements also rebut its litigation position that the purported lack of quality of Fashion Nova's goods somehow harms HGW's reputation or goodwill.  Moreover, HGW has not proven its reputation with any competent evidence, or shown any evidence drawing a negative association between HGW and Fashion Nova.  To the contrary, HGW claims its business and goodwill have grown since November 2023.  *See* Lind Decl., ¶¶19-22.

Finally, even if HGW had submitted any evidence of actual harm (it did not), such alleged harm would be compensable by monetary damages.  HGW has not explained why any potential harm would not be fully remedied by the

---

[5] *See also Ontel Prods. Corp. v. Brownstone Res., LLC*, 2021 WL 6103538, at *5 (C.D. Cal. Aug. 20, 2021) (denying TRO; noting plaintiff "must support its claims of irreparable harm with concrete evidence" and collecting authority that declarations solely from plaintiff's personnel are insufficient); *Puma SE v. Forever 21, Inc.*, 2017 WL 4771003, at *3 (C.D. Cal. June 2, 2017) ("to show harm to its brand under Ninth Circuit precedent, [plaintiff] must do more than simply submit a declaration insisting that its brand image and prestige have or will be harmed"); *Pom Wonderful LLC v. Pur Beverages LLC*, 2015 WL 10433693, at *11 (C.D. Cal. Aug. 6, 2015) (claims about "likely reputational harm and loss of goodwill []" insufficient"; plaintiff lacked "any *evidence* that [defendant]'s alleged infringement is likely to harm [plaintiff]'s reputation and/or goodwill") (italics in original).

Mitchell Silberberg & Knupp LLP

**FASHION NOVA'S OPPOSITION TO EX PARTE TRO APPLICATION**

monetary relief sought by HGW.  Given the absence of imminent and irreparable harm, HGW's belated Application should be denied.

## IV.   HGW CANNOT SHOW LIKELY SUCCESS ON THE MERITS

HGW's arguments on "the merits" likewise rely heavily on supposition, aspersion, and generalized arguments, which are insufficient to demonstrate a likelihood of success on the merits of its trademark infringement claim.[6]  HGW is not entitled to the "extraordinary and drastic remedy" of a TRO or preliminary injunction, "which should not be granted unless the movant shows substantial proof" and "*by a clear showing*, carries the burden of persuasion."  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original) (quotations omitted).

As an initial matter, HGW's Motion fails to even specify which mark that it claims Fashion Nova infringed.  Instead, HGW vaguely argues that Fashion Nova infringed the "HGW Marks," which encompass four separate groups of marks consisting of the term "HOT GIRL WALK," a stylized logo using the words "Hot Girl Walk," the letters "HGW," and the phrase "GRATITUDE, GOALS, CONFIDENCE."  Memo. at 4-5.  But HGW has not presented any evidence that Fashion Nova ever used the stylized logo, "HGW," or "GRATITUDE, GOALS, CONFIDENCE."  *See* Dkt. 9-8, 9-9, 9-11, 9-12.  HGW's refrain that Fashion Nova infringed the "HGW Marks"—like many other statements in its Motion and Ms. Lind's declaration—is unsupported and misleading.

Moreover, HGW has not addressed, let alone shown, how it is likely to succeed in proving that Fashion Nova's references to the "Hot Girl Walk" do ***not*** qualify as nominative fair use.  Nor has HGW presented actual evidence or analysis to support its bald assertion that consumers are likely to be confused under

---

[6] Fashion Nova does not address HGW's state law claims because HGW has "not separately discussed" them and concedes that the elements "mirror the federal standard."  Memo. at 14 n.1.  These claims fail for the same reasons as HGW's federal trademark infringement claim.  HGW has not bothered to argue the merits of its dilution claim, and its First Amended Complaint (Dkt. 5) does not even allege that the "HGW Marks" are famous.  *See* 15 U.S.C. § 1125(c)(1) (dilution requires that the plaintiff be "the owner of a famous mark").

Mitchell
Silberberg &
Knupp LLP

the *Sleekcraft* test. To the contrary, the record shows that consumers are **not** likely to be confused.

> **A.    HGW Has Not Shown Likely Consumer Confusion Under the Nominative Fair Use Analysis**

Fashion Nova used the words "Hot Girl Walk" to refer to the Hot Girl Walk that had become a trend on social media—*i.e.*, HGW's claimed service. *See* Watter Decl., ¶¶ 4-6.[7] Fashion Nova's references are protected by nominative fair use.

"[W]here a defendant has used the plaintiff's mark to describe the plaintiff's product, *even if the defendant's ultimate goal is to describe his own product*," the "nominative fair use analysis is appropriate." *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir. 2002) (emphasis in original). "In cases where a nominative fair use defense is raised, [the court] ask[s] whether (1) the product was 'readily identifiable' without use of the mark; (2) defendant used more of the mark than necessary; or (3) defendant falsely suggested he was sponsored or endorsed by the trademark holder." *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1175-76 (9th Cir. 2010). "[I]f the nominative use satisfies the three-factor [] test, it doesn't infringe. If the nominative use does not satisfy all the [] factors, the district court may order defendants **to modify their use of the mark** so that all three factors are satisfied; it may **not enjoin** nominative use of the mark altogether." *Id. at 1176* (emphases added).

This analysis for "nominative fair use 'replaces' *Sleekcraft* as the proper test for likely consumer confusion whenever defendant asserts to have referred to the trademarked good itself." *Toyota Motor Sales*, 610 F.3d at 1182. This test "better addresses concerns regarding the likelihood of confusion in nominative use cases" because "[w]hen a defendant uses a trademark nominally, the trademark will be identical to the plaintiff's mark, at least in terms of the words in question" and

---

[7] Many others, having no relation to Fashion Nova, have likewise referred to "Hot Girl Walk" in discussing what outfits to wear on such walks on various websites. *See, e.g.*, Declaration of Elaine K. Kim ("Kim Decl."), ¶¶ 5-8, Exs. 4-7.

**FASHION NOVA'S OPPOSITION TO EX PARTE TRO APPLICATION**

Mitchell Silberberg & Knupp LLP

therefore, *Sleekcraft*'s similarity-of-the-marks factor may "lead to the incorrect conclusion that virtually all nominative uses are confusing." *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 801 (9th Cir. 2002).

Nominative fair use is **not** an affirmative defense.  It is "error" to "treat[] nominative fair use as an affirmative defense to be established by the [defendant] only after [plaintiff] showed a likelihood of confusion under *Sleekcraft*." *Toyota Motor Sales*, 610 F.3d at 1182.  As the plaintiff claiming infringement, HGW "must bear the burden of establishing that the [defendant's] use of the [plaintiff's] mark was *not* nominative fair use" because, "as the Supreme Court has unambiguously instructed, the Lanham Act always places 'the burden of proving likelihood of confusion … on the party charging infringement.'" *Id.* at 1182-83.

HGW has not carried its "burden of establishing that [Fashion Nova's] use of [the claimed "Hot Girl Walk"] mark was *not* nominative fair use." *Toyota Motor Sales*, 610 F.3d at 1182.  *First*, the "Hot Girl Walk" was not readily identifiable without use of the words "Hot Girl Walk."  As HGW states, "Hot Girl Walk" was what Ms. Lind, in her 2021 TikTok video, called the concept of a "four-mile outdoor walk" that "enables you to look and feel your own version of 'Hot.'"  Lind Decl., ¶ 4.  It is not reasonably possible to refer to the "Hot Girl Walk" without using the words "Hot Girl Walk."  *See New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992) (it is not reasonably possible to refer to "the Boston Marathon without using the trademark").

*Second*, HGW has not established that Fashion Nova used more of the "Hot Girl Walk" mark than was reasonably necessary to identify "Hot Girl Walk."  HGW has not argued or shown that Fashion Nova used the "Hot Girl Walk" stylized logo—which HGW uses all over its website (*see* Kim Decl., ¶¶ 2-3, Exs. 1-2)—in any Fashion Nova product titles or on the Fashion Nova website.  *See Playboy Enters.*, 279 F.3d at 802 (affirming summary judgment to defendant who used "Playboy" and "Playmate" on website; "[defendant's] banner advertisements

Mitchell
Silberberg &
Knupp LLP

20

**FASHION NOVA'S OPPOSITION TO EX PARTE TRO APPLICATION**

and headlines satisfy this element because they use only the trademarked words, not the font or symbols associated with the trademarks"); *New Kids on the Block,* 971 F.2d at 304, 308 (affirming summary judgment to *The Star* and *USA Today,* which used "New Kids on the Block" to promote profit-generating polls asking fans to call 900 numbers; defendants did not use the New Kids' logo).

*Third*, HGW has not shown that Fashion Nova falsely suggested sponsorship or endorsement by HGW.  HGW does not contend that Fashion Nova announced a "Fashion Nova x Hot Girl Walk Collaboration."  HGW does not contend that Fashion Nova sold t-shirts with HGW's logo printed on them.  *See New Kids on the Block,* 971 F.2d at 304, 309 (*The Star*'s announcement, which appeared under a picture of the New Kids and asked, "Which of the New Kids on the Block would you most like to move next door?…," was "effusive but says nothing that expressly or by fair implication connotes endorsement or joint sponsorship on the part of the New Kids"); *WCVB–TV v. Boston Athletic Ass'n,* 926 F.2d 42, 45-47 (1st Cir. 1991) (television station's use of "Boston Marathon" trademark in unlicensed broadcast did not suggest official sponsorship or endorsement, although station had previously paid for license to use mark), *cited in New Kids on the Block,* 971 F.2d at 307; *Cairns,* 292 F.3d at 1154-55 (affirming summary judgment to defendant; no suggestion of sponsorship or endorsement where none of defendant's ads "for its Diana-related products claim that these products are sponsored or endorsed by the Fund [which owned Princess Diana's name and likeness]," despite defendant's references to "authentic" replicas; ads were not required to have "a disclaimer that the products are not sponsored or endorsed by the Fund"). When Fashion Nova has collaborated with other brands, Fashion Nova has clearly stated that in social media.  *See* Watter Decl., ¶16 & Ex. A.

HGW complains that Fashion Nova used "hot-girl-walk" in two URLs.  *See* Dkt. 9-12.  However, HGW does not contend that its trademark was used as the domain name itself.  The (now-disabled) URLs were under the fashionnova.com

domain name and did not actively state that Fashion Nova was affiliated with HGW.  *See Toyota Motor Sales*, 610 F.3d at 1179 ("Outside the special case of trademark.com, or domains that actively claim affiliation with the trademark holder, consumers don't form any firm expectations about the sponsorship of a website until they've seen the landing page—if then.  This is sensible agnosticism, not consumer confusion.").

HGW also complains that Fashion Nova used "hot girl walk" or "hot girl" in "metatags."  *See* Memo. at 10:17-21.  In *Playboy Enters.*, 279 F.3d at 803, the Ninth Circuit held that the defendant's use of the "Playboy" and "Playmate" trademarks as metatags was nominative fair use, just like the uses in the banner ads on the website.  While the court noted that "its decision might differ if the metatags listed the trademarked term so repeatedly that [plaintiff's] site would regularly appear above [plaintiff's] searches for one of the trademarked terms" (*id.* at 804), here, HGW does not contend that Fashion Nova's website regularly appeared above HGW's own website in Google searches for "hot girl walk" or any other trademarked term.  Indeed, HGW claims it was only recently alerted about Fashion Nova's website.  *See* Lind Decl., ¶42.  A Google search for "hot girl walk" does not pull up Fashion Nova's website in the first page of results, much less above HGW's website.  *See* Kim Decl., ¶ 4 & Ex. 3.

It is irrelevant that Fashion Nova's use was commercial, because "a nominative use may also be a commercial one." *Playboy Enters.*, 279 F.3d at 801.  "[W]here, as here, the use does not imply sponsorship or endorsement, the fact that it is carried on for profit and in competition with the trademark holder's business is beside the point." *New Kids on the Block*, 971 F.2d at 309.  Indeed, as discussed below, Fashion Nova did *not* compete with HGW's business.  HGW has failed to show that it will likely succeed in proving that Fashion Nova's use of "Hot Girl Walk" is ***not*** nominative fair use.

Mitchell
Silberberg &
Knupp LLP

**FASHION NOVA'S OPPOSITION TO EX PARTE TRO APPLICATION**

**B.    HGW Has Not Shown Likely Success Under *Sleekcraft***

Even if the nominative fair use analysis did not apply, the TRO should be denied because HGW has not shown a likelihood of prevailing under *Sleekcraft*.

**1.    "Hot Girl Walk" Is Weak**

"Two measures are relevant in analyzing the strength of the protected mark: conceptual strength and commercial strength." *Good Meat*, 716 F. Supp. 3d at 797.  HGW's mark is weak in both.

*First*, "Hot Girl Walk" is conceptually weak.  The term "hot girl walk" is generic.  It is commonly used on the Internet to refer to the basic activity, as opposed to a source identifier.  *See* Kim Decl., Exs. 4-7.  At best, the term is descriptive.  Although HGW argues the term is suggestive, "[i]t takes little to no stretch of the imagination to connect" "Hot Girl Walk" with a walk on which a girl feels "hot," case authority does not support the argument. *TPW Mgmt.*, 2016 WL 6216879, at *7 ("We Know Just the Place" descriptive of referral services); *see Good Meat*, 716 F. Supp. 3d at 798 ("GOOD MEAT" descriptive of educational services concerning responsible consumption of animal meat).

A finding of descriptiveness rebuts any presumption of distinctiveness, requiring HGW to present evidence that "consumers viewed the term ["hot girl walk"] as referring to a single source: that is [HGW]." *Good Meat*, 716 F. Supp. 3d at 798-99.  HGW has not done so, despite touting its recent victory in another trademark litigation.  *See id.* (evidence that plaintiff "promoted its services throughout the country" insufficient).  In any case, even if the mark were suggestive, it would still be presumptively weak and "only be entitled to moderate protection." *TPW Mgmt.*, 2016 WL 6216879, at *7.

*Second*, HGW has failed to prove that "Hot Girl Walk" is commercially strong as a source identifier.  HGW says there have been millions of views of Ms. Lind's original TikTok video, but the screenshot in her declaration reflects that the video referred to the ***concept*** of a "hot girl walk."  Lind Decl., ¶ 6; *see id.*, ¶ 4

Mitchell
Silberberg &
Knupp LLP

23

("The HOT GIRL WALK® began as a four-mile outdoor walk").  The video did *not* use "hot girl walk" as a trademark, *i.e.*, in connection with the sale, offering of sale, or distribution, or advertising of any goods or services.  *See LegalForce RAPC Worldwide, PC v. LegalForce, Inc.*, 124 F.4th 1122, 1126 (9th Cir. 2024) (no trademark use where object of advertising "is not a 'good' for purposes of the Lanham Act, because it is not a movable or tangible thing").

HGW has not adduced any *evidence* of its expenditures in actually advertising the "Hot Girl Walk" *trademark*.  HGW's vague, unsubstantiated assertions—such as Ms. Lind has "invested substantial time, energy, and money into the HGW Marks and brand" (Lind Decl., ¶ 9)—do *not* suffice.  *See Summit Ice Melt Sys., Inc. v. HotEdge, LLC*, 2025 WL 305202, at *4 (D. Nev. Jan. 27, 2025) (plaintiff's assertions that it had spent "'significant funds' to promote its products" "do not suffice as proof of commercial strength"), *aff'd*, No. 25-914, 2025 WL 2911139 (9th Cir. Oct. 14, 2025).

Nor has HGW presented evidence tying any expenditures to actual marketplace recognition.  *See TPW*, 2016 WL 6216879, at *7-8 ($2.2 million expenditure did not support commercial strength as it was not tied to "marketplace recognition").[8]  The conclusory claims of HGW's founder do *not* suffice.  *See Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902, 910 (9th Cir. 1995) ("Attestations from persons in close association and intimate

---

[8] *See also Great W. Air, LLC v. Cirrus Design Corp.*, 649 F. Supp. 3d 965, 978 (D. Nev. 2023) (no "strong market presence" despite plaintiff's "evidence of the awards it has won, articles about its success, its advertisements, its founders' induction into the National Aviation Hall of Fame, [] testimony from its president about how certain of its planes have been bestsellers in their categories for years running [and] $10 million in marketing" because "it did not offer evidence showing how much of the charter market its planes occupy or what type of advertising it has done in that market"), *aff'd*, No. 23-15157, 2024 WL 5134351 (9th Cir. Dec. 17, 2024); *New Milani Grp., Inc. v. J.T. Bella, LLC*, 2013 WL 12116579, at *7 (C.D. Cal. July 22, 2013) ($2 million annual advertising expenditure and "strong social media presence" insufficient because plaintiff failed to show "that its expenditures have made the [] mark commercially strong"; no evidence of size of relevant market, market share, or consumer surveys).

Mitchell Silberberg & Knupp LLP

**FASHION NOVA'S OPPOSITION TO EX PARTE TRO APPLICATION**

contact with (the trademark claimant's) business do not reflect the views of the purchasing public.") (quotations omitted).[9]

The "Hot Girl Walk" mark is further weakened by the fact that it is in a "crowded field" of similar "Hot Girl" marks.  *See* J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION § 11:85 (5th ed. Dec. 2025 Update) ("In a 'crowded' field of look-alike marks, each member of the crowd is relatively 'weak' in its ability to prevent use by others in the crowd."), *quoted in Miss World (UK) Ltd. v. Mrs. Am. Pageants, Inc.*, 856 F.2d 1445, 1449 (9th Cir. 1988).  There are **40 other** registered trademarks containing "Hot Girl," including for clothing and athletic apparel (*e.g.*, HOT GIRL SUMMER, HOT GIRL APPAREL, HOT GIRL SODA, HOT GIRLS DO PILATES); markets/retail (HOT GIRL MARKET); and entertainment, education, and organizing social events (*e.g.*, HOT GIRLS DO SHABBAT).  The term "hot girl," and "hot girl" in combination with a third word, are ubiquitous in the marketplace, on the web, and in common parlance.  *See* Kim Decl., ¶¶ 9, 11-20, Exs. 8, 10-19.

Yet, HGW contends it has the right not only to "Hot Girl Walk," but to "Hot Girl."  HGW claims Fashion Nova offered athleisure products named or titled "Hot Girl Walk" *or "Hot Girl,"* and that searching *"Hot Girl"* or "Hot Girl Walk" supposedly calls up apparel products.  Memo. at 9:2-7.  HGW also complains that Fashion Nova changed some instances of "Hot Girl Walk" to *"Hot Girl,"* which HGW argues—without elaboration or authority—"really does not address the underlying infringement." *Id.* at 10:6-10.  In fact, Fashion Nova used "Hot Girl" to

---

[9] *See also Punchbowl, Inc. v. AJ Press LLC*, 2024 WL 4005220, at *7 (C.D. Cal. Aug. 22, 2024) (granting summary judgment to defendant; "Plaintiff has offered no evidence showing that its efforts to strengthen its mark have borne fruit; there is no evidence (beyond a declaration from Plaintiff's founder) that consumers consider Plaintiff's PUNCHBOWL mark to be particularly strong."); *Harman Int'l Indus., Inc. v. Jem Access., Inc.*, 668 F. Supp. 3d 1025, 1041 (C.D. Cal. 2023) (plaintiff's attestations were of low probative value because expenditures were not "tied ... to any evidence that such efforts have been effective" in making consumers associate mark with its services, and were "based on the statements of [plaintiff's] executives, and thus [do] not provide insight into actual consumer views").

describe products *years before* Mia Lind's first TikTok video in 2021. *See* Watter Decl. ¶ 3.

### 2.      There Is No Proximity of Goods

The proximity factor weighs heavily against confusion.  "[W]hether [the parties] directly competed for customers for their [goods] is 'always … important' in trademark disputes." *Neurovision Med. Prods. Inc. v. NuVasive, Inc.*, 494 F. App'x 749, 752 (9th Cir. 2012) (vacating finding of likely confusion); *see Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1056 (9th Cir. 1999) ("If … [the parties] did not compete to any extent whatsoever, the likelihood of confusion would probably be remote," even if marks were virtually identical).

HGW has not shown that the parties compete.  Nor do they sell goods that are similar in use or function.  Indeed, HGW primarily "offers services, while [Fashion Nova] sells goods." *Good Meat*, 716 F. Supp. 3d at 800.  "What is the Hot Girl Walk®?"  According to HGW's website, it is a "4-mile walk."  Kim Decl., Ex. 1.  In its Motion, HGW asserts that the HOT GIRL WALK® has become "symbolic of a way to approach physical and mental wellness as opposed to a type of physical activity."  Lind Decl., ¶ 7.  This conclusory assertion lacks foundation, but in any event, HGW does not argue that Fashion Nova sells "walks" or a wellness approach.  HGW also asserts that it has partnered with companies like Strava, but it appears that the partnership had to do with a walking club, which Fashion Nova does not offer.  *Id.*, ¶¶ 17-18.

HGW nebulously argues that Fashion Nova's "actions are protected classifications covered by the registered HGW Marks." Memo. at 17:12-13.  But HGW does not argue that its principal business is to sell athletic apparel, nor has it adduced evidence of apparel sales.  *See Punchbowl, Inc.*, 2024 WL 4005220, at *7 (rejecting plaintiff's argument that courts should not overemphasize differences in principal lines of business).  On its website, HGW offers five items (three hats, a sweatshirt, and a canvas bag), all of which bear the hot-pink stylized logo.  *See*

Mitchell Silberberg & Knupp LLP

26

**FASHION NOVA'S OPPOSITION TO EX PARTE TRO APPLICATION**

Kim Decl., ¶ 3, Ex. 2.  "The mere fact that [plaintiff] sell[s] some clothing items and [defendant] specializes in retail apparel does not establish proximity of the goods for purposes of likelihood of confusion."  *Michael Caruso and Co., Inc. v. Estefan Enters., Inc.*, 994 F. Supp. 1454, 1461 (S.D. Fla. 1998), *aff'd*, 166 F.3d 353 (11th Cir. 1998); *see also Playmakers, LLC v. ESPN, Inc.*, 297 F. Supp. 2d 1277, 1282 (W.D. Wash. 2003) (that the parties "both relate to sports in general is too remote to raise an inference of confusion"), *aff'd*, 376 F.3d 894 (9th Cir. 2004).

### 3.    HGW's Mark and Fashion Nova's Use Differ

HGW uses "Hot Girl Walk" on its website and five items in the form of its hot-pink stylized logo or in conjunction with it:




*See* Kim Decl., Exs. 1, 2.  According to HGW, Fashion Nova's website, hangtags/labels, and one social media post used the phrase in plain black font, underneath Fashion Nova's name and logo (*see* Lind Decl., ¶¶ 46-50):



When considered "'in their entirety and as they appear in the marketplace,'" the uses are not confusingly similar.  *TPW*, 2016 WL 6216879, at *4-5 (similarity factor favored defendant; marks appeared in proximity to parties' "own unique

Mitchell
Silberberg &
Knupp LLP

**FASHION NOVA'S OPPOSITION TO EX PARTE TRO APPLICATION**

logos and/or company names"); *see New Milani Grp.*, 2013 WL 12116579, at \*10-11 (different fonts and coloring made marks visually distinct) (citing cases).[10]

### 4.     There Is No Actual Consumer Confusion

The lack of any actual consumer confusion over two years "weighs against a finding that [HGW] will succeed on the merits of its trademark claim." *New Milani Grp.*, 2013 WL 12116579, at \*13; *see Equinox Hotel Mgmt., Inc. v. Equinox Holdings, Inc.*, 2018 WL 659105, at \*8 (N.D. Cal. Feb. 1, 2018) (factor weighed against PI, where plaintiff "proffers just eleven incidents from which it claims actual confusion exists" over 30 months); *Good Meat*, 716 F. Supp. 3d at 801 (same; plaintiff "allege[d] that  [defendant] ha[d] flooded the online market with its advertising, but only presented [] one example of actual confusion").

HGW argues "there is evidence that HGW's current and future brand collaborators are confused by Fashion Nova's use of the HGW Marks." Memo. at 18:1-2.  Not so.  Ms. Lind *speculates* that one collaborator thought that HGW was sponsoring Fashion Nova, without citing any statement by this unidentified company even suggesting as much.  *See* Lind Decl., ¶¶ 57-59.  In any case, purported confusion among business associates is not evidence of *consumer* confusion.  *See JIPC Mgmt., Inc. v. Incredible Pizza Co.*, 2009 WL 8591607, at \*17 n. 68 (C.D. Cal. July 14, 2009) (confusion among "business associates" cannot "support a finding of infringement independent of customer confusion").

---

[10] *See also Walter v. Mattel, Inc.*, 210 F.3d 1108, 1111 (9th Cir. 2000) (rejecting plaintiff's argument that Mattel's use of Matt's distinctive logo in conjunction with plaintiff's trade name Pearl Beach implied that plaintiff had licensed its product; "[T]he term 'Pearl Beach' in Mattel's products … is invariably accompanied by a reference to Barbie, which is clearly the 'salient part of the mark indicative of the product's origin.'"); *Edge Games, Inc. v. Elec. Arts, Inc.*, 745 F. Supp. 2d 1101, 1105, 1116 (N.D. Cal. 2010) (marks not "confusingly similar" where "EA and EA DICE were prominently displayed on the game's packaging and advertising"); *Playmakers, LLC*, 297 F. Supp. 2d at 1283 (although marks consisted of the same word, factor did not show confusion given "substantial differences in visual appearance").

Mitchell Silberberg & Knupp LLP

**FASHION NOVA'S OPPOSITION TO EX PARTE TRO APPLICATION**

## 5.    The Parties Use Disparate Marketing Channels

Citing no evidence, HGW avers that the parties "both primarily market through websites and various social media pages, including their own Instagram profiles, Facebook pages, and TikTok pages," and partner with others to market online.  Memo. at 18:16-19.  However, under Ninth Circuit precedent, "advertising online is so commonplace that use of the internet for marketing is '"properly accorded ... no weight."'"  *Summit Ice Melt Sys., Inc.*, 2025 WL 2911139, at \*2 (9th Cir. Oct. 14, 2025); *see Caryn Mandabach Prods. Ltd. v. Sadlers Brewhouse Ltd.*, 2021 WL 2497928, at \*5 (C.D. Cal. May 19, 2021) (use of social media "does not favor a finding of a likelihood of confusion").  Here, this factor weighs ***against*** confusion because there is no evidence that the parties sell their goods in the same stores or same websites.  *See New Milani Grp.*, 2013 WL 12116579, at \*14; *Glow Indus., Inc. v. Lopez*, 273 F. Supp. 2d 1095, 1126 (C.D. Cal. 2003).

## 6.    Purchasers Are Likely to Exercise a High Degree of Care

Fashion Nova is basically an online retailer; virtually all of its sales occur over the Internet.  Watter Decl., ¶ 2.  The Ninth Circuit has recognized that "consumers who use the internet for shopping are generally quite sophisticated."  *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d at 1137, 1152-53 (9th Cir. 2011); *see Toyota Motor Sales*, 610 F.3d 1171, 1178 ("Consumers who use the internet for shopping are generally quite sophisticated about such matters….").  HGW does not contend, and certainly hasn't proven, that Fashion Nova's customers are not brand-savvy.  This factor, too, weighs against confusion.  *See New Milani Grp.*, 2013 WL 12116579, at \*14 ("Although neither is a particularly expensive item, courts have found that purchasers of cosmetic and beauty-related items are generally brand conscious, which reduces the likelihood of confusion."); *Nordstrom, Inc. v. 7525419 Canada Inc.*, 2012 WL 12507605, at \*10 (W.D. Wash. Dec. 27, 2012) (because defendant's customer had to provide

**FASHION NOVA'S OPPOSITION TO EX PARTE TRO APPLICATION**

Mitchell Silberberg & Knupp LLP

personal information including email address, "a reasonably prudent consumer would exercise a higher degree of care" than "in making cash purchases").

### 7.    Fashion Nova's Nominative Fair Use Cuts Against Confusion

"With respect to the factor of intent, the inquiry focuses on whether [defendant] adopted [a trademark] with an intent to deceive the public as to the source of the services or goods that it offers." *TPW Mgmt.*, 2016 WL 6216879, at *9. Here, Fashion Nova used the words "Hot Girl Walk" to refer to the trending wellness walk; it did not adopt or use it as a trademark to indicate a different source for its goods. Fashion Nova did not use HGW's stylized logo, or announce or claim that HGW was sponsoring or endorsing Fashion Nova's goods. *See Cairns v. Franklin Mint Co.*, 107 F. Supp. 2d 1212, 1218 (C.D. Cal. 2000) (defendants' intent "to produce products bearing Princess Diana's image for sale to collectors," not to imply the Fund's endorsement, "weighs against finding a likelihood of confusion"). And at the time Fashion Nova first referred to activewear "for the gym to hot girl walks" in late 2022 (Watter Decl., ¶ 4), HGW had not used "Hot Girl Walk" on any apparel. *See* Lind Decl., Ex. A (first use 1-30-2023); *Playmakers*, 297 F. Supp. 2d at 1284 ("[T]here is no presumption of bad faith just because someone knew that a senior user existed."). In fact, HGW had not yet been formed, and Ms. Lind had not even begun working for HGW full-time. *See* Kim Decl., ¶ 10, Ex. 9; Lind Decl., ¶ 9 (stating that she resigned from Oracle in September 2023).

HGW's conspiracy theory that a Fashion Nova employee, Hailey Ordanez, engaged in some "calculated" plan to obtain some unidentified information, by communicating with HGW about a potential event in April 2024 and signing up for HGW newsletters, is unfounded and nonsensical. *See* Memo. at 8. HGW's assertion of willful infringement is also baseless: Ms. Ordanez had nothing to do with the naming of the few products at issue, or the two references to "Hot Girl Walk" on Fashion Nova's website. *See* Watter Decl., ¶ 17. Moreover, courts have

Mitchell
Silberberg &
Knupp LLP

**FASHION NOVA'S OPPOSITION TO EX PARTE TRO APPLICATION**

rejected the notion that "continued use" after a demand letter shows bad faith because such a "conclusion is a legal fiction," as "the defendant may well believe that plaintiff's contention is legally wrong[.]" *CLS Worldwide Servs., LLC v. Cartier Executive Limo Serv.*, 2006 WL 8563341, at *15 (C.D. Cal. June 15, 2006). Here, Fashion Nova believes it had a fair use right to refer to the walk, but nevertheless removed those references in good faith, pending litigation. *See* Watter Decl., ¶¶ 7-10.

### 8.    HGW Has Not Shown Any Likely Expansion

This factor requires HGW to show a "'strong possibility' that either party may expand [its] business to compete with the other[.]" *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 354 (9th Cir. 1979). Without explanation or evidence, HGW argues "[n]either HGW nor Fashion Nova show signs of slowing down their respective growth and development." Memo. at 20:24-25. This factor weighs in Fashion Nova's favor. *See Equinox*, 2018 WL 659105, at *9 ("[p]laintiff's claim that it [was] 'interested' in developing an Equinox-branded hotel" was "insufficient" without "concrete evidence of expansion plans").

### 9.    HGW Has Not Provided Any Survey Evidence

Because HGW did not offer survey testing, the Court may infer that any results would not favor HGW. *See E! Ent. Television, Inc. v. Ent. One GP Ltd.*, 2009 WL 10673224 (C.D. Cal. May 19, 2009), *aff'd sub nom. EA Ent. Television, Inc. v. Ent. One GP Ltd.*, 363 F. App'x 510 (9th Cir. 2010) (denying PI).

***In summary***: The relevant question is not whether confusion is "merely 'possible,'" but "probable." *M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073, 1085 (9th Cir. 2005). Here, HGW has not made a clear showing that most factors, or the analysis as a whole, show likely confusion. To the contrary, the factors weigh sharply against likely confusion. The TRO should be denied.[11]

---

[11] *See, e.g., Good Meat*, 716 F. Supp. 3d at 803 (denying PI despite similarity of the marks; "the relative weakness of the protected mark and the differences

Mitchell Silberberg & Knupp LLP

31

**FASHION NOVA'S OPPOSITION TO EX PARTE TRO APPLICATION**

## V. THE EQUITIES AND PUBLIC INTEREST WEIGH AGAINST HGW

HGW "fails to show a likelihood of success on its claims and therefore [it] does not demonstrate the balance of equities favors an injunction." *Caryn Mandabach*, 2021 WL 2497928, at *8. Moreover, as discussed, HGW's claims of reputational harm are entirely speculative. And because HGW "has not clearly shown a likelihood of consumer confusion or irreparable harm," there also is no "significant threat to the public interest in the absence of injunctive relief." *Good Meat*, 716 F. Supp. 3d at 806; *see Caryn Mandabach*, 2021 WL 2497928, at *8.

## VI. HGW's TRO IS IMPROPERLY VAGUE AND OVERBROAD

"Injunctive relief is an 'extraordinary remedy,' . . . and 'must be tailored to remedy the specific harm alleged.'" *McCormack v. Hiedeman*, 694 F.3d 1004, 1019 (9th Cir. 2012) (citations omitted). "A district court abuses its discretion by issuing an 'overbroad' injunction." *Id.* (citations omitted). HGW's Proposed TRO seeks sweeping injunctive relief that "is riddled with vague and overbroad provisions." *Lepow Int'l LLC v. Fang*, 2014 WL 12580228, at *5 (C.D. Cal. May 16, 2014) (limiting scope of injunctive relief). We address each in turn.

*First*, HGW vaguely seeks to prohibit use of "HGW Marks" (undefined in the Proposed Order) or "any confusingly similar variation thereof such as 'hot girl'" (a term over which HGW has no claim). Dkt. 9-1, ¶ 1. To the extent "HGW Marks" carries the same definition as in HGW's Motion, there has been no showing Fashion Nova actually uses such marks (*i.e.*, "HGW," the stylized logo, or slogan). Further, the "'confusingly similar' portion of the requested injunction is overbroad and vague, as it does not provide a clear standard by which" Fashion

between [plaintiff's] services and [defendant's] goods, weigh against confusion"); *Caryn Mandabach*, 2021 WL 2497928, at *6 ("Although three factors [similarity of marks, degree of care, and likelihood of expansion] favor a finding of a likelihood of confusion, Plaintiff fails to make a 'clear showing' of a likelihood of confusion at this stage."); *Equinox*, 2018 WL 659105, at *9 (denying PI despite strength of mark, similarity of marks, and intent factor favoring plaintiff); *see also Lamps Plus, Inc. v. Lamps Pro, LLC*, 2024 WL 4556963, at *4 (C.D. Cal. Oct. 23, 2024) (denying PI where "factual disputes" affected the *Sleekcraft* analysis).

Mitchell Silberberg & Knupp LLP

**FASHION NOVA'S OPPOSITION TO EX PARTE TRO APPLICATION**

Nova "could determine what conduct is prohibited." *Haldiram India (P) LTD v. Punjab Trading, Inc.*, 2025 WL 3158082, at *8 (W.D. Wash. Nov. 12, 2025) (quotations omitted) (citing case).

*Second*, HGW improperly seeks an order requiring Fashion Nova to direct actions by third parties which it does not control. *Compare* Dkt. 9-1, ¶ 2 *with, e.g.*, *Miss Glob. Org. LLC v. Mak*, 2018 WL 8058845, at *4 (C.D. Cal. Dec. 14, 2018) ("no individual controls the MGO Wikipedia page, it would be overbroad for the Court to require Defendants to edit that page based on Plaintiff's request").

*Third*, HGW seeks to restrain a laundry list of vague acts such as "[p]assing off" goods or services as "affiliated with, authorized or approved HGW," "committing any acts calculated to cause consumers" to believe such affiliation and, "further infringing" and "competing unfairly with HGW." Dkt. 9-1, ¶¶ 4-6. Each has been improperly "constructed ... from legal conclusions without providing any detail of the precise conduct to be prohibited." *Lepow Int'l LLC*, 2014 WL 12580228, at *5. In any event, the relief sought by HGW is moot as Fashion Nova has ceased use of the words "Hot Girl Walk" on its website. *See* Section III.C, *supra*. HGW's overboard injunction should be denied, or alternatively, the Court should tailor it "in order to avoid creating confusion and overburdening [Fashion Nova]." *Lepow Int'l LLC*, 2014 WL 12580228, at *5.[12]

## VII.  CONCLUSION

HGW's delayed, improvident, and wholly unsupported Application for a TRO and an Order to Show Cause should be denied.

DATED: November 24, 2025            MITCHELL SILBERBERG & KNUPP LLP

By:*/s/ Lucia E. Coyoca*
Lucia E. Coyoca
Attorneys for Defendant Fashion Nova, LLC

---

[12] If a TRO does issue, a significantly higher bond than the $5,000 requested is warranted to "to safeguard [Fashion Nova] if the Court later determines that [it] has been wrongfully enjoined." *Moroccanoil, Inc. v. Zotos Int'l, Inc.*, 230 F. Supp. 3d 1161, 1178-79 (C.D. Cal. 2017) (imposing $250,000 bond); *CSC Brands LP v. Herdez Corp.*, 191 F. Supp. 2d 1145, 1154 (E.D. Cal. 2001) ($100,000 bond).

Mitchell Silberberg & Knupp LLP

**FASHION NOVA'S OPPOSITION TO EX PARTE TRO APPLICATION**

**Certificate of Compliance**

The undersigned, counsel of record for Defendant Fashion Nova, LLC, certifies that this brief does not exceed 25 pages, which complies with the Court Standing Order (Dkt. 13, § 5(c)).

DATED: November 24, 2025                By: */s/ Lucia E. Coyoca*

Mitchell
Silberberg &
Knupp LLP

**FASHION NOVA'S OPPOSITION TO EX PARTE TRO APPLICATION**