**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

| | | |
|---|---|---|
| Case No. | **CV 25-10800-JFW(DSRx)** | Date: December 5, 2025 |
| Title: | Hot Girl Walk LLC -v- Fashion Nova, LLC | |

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Shannon Reilly | None Present |
| Courtroom Deputy | Court Reporter |

| | |
|---|---|
| **ATTORNEYS PRESENT FOR PLAINTIFFS:** | **ATTORNEYS PRESENT FOR DEFENDANTS:** |
| None | None |

**PROCEEDINGS (IN CHAMBERS):**     **ORDER RE: PRELIMINARY INJUNCTION**

    On November 18, 2025, Plaintiff Hot Girl Walk LLC ("Plaintiff" or "HGW") filed a Motion for Temporary Restraining Order and Preliminary Injunction, which the Court construed an Ex Parte Application for a Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue ("Application").  On November 24, 2025, the Court granted Plaintiff's Application and ordered Defendant Fashion Nova, LLC ("Defendant" or "Fashion Nova") to show cause why a preliminary injunction should not issue.  On December 1, 2025, Fashion Nova filed its Response.  On December 3, 2025, HGW filed its Reply.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument.  The hearing calendared for December 8, 2025 at 11:00 a.m. is hereby vacated and taken off calendar  After considering the Application, Response, and Reply, and the arguments therein, the Court rules as follows:

**I.     FACTUAL AND PROCEDURAL BACKGROUND**[1]

    Amelia "Mia" Lind created the HOT GIRL WALK® in and around November 2020 and early 2021.  It began as a four-mile outdoor walk where the focus was on gratitude, thinking positively about goals and plans, and reminding yourself of all of your accomplishments.  Ms. Lind created the first HOT GIRL WALK® TikTok video and posted it on January 23, 2021.  Between January 2021 and April 2021, the HGW brand went viral and now there are over 3 million views of Ms. Lind's first TikTok.  Although the HOT GIRL WALK® traditionally involved a four-mile walk, as a

---

[1]To the extent that the Court has relied on evidence to which the parties have objected, the Court has considered and overruled those objections.  As to the remaining objections the Court finds that it is unnecessary to rule on those objections because the disputed evidence was not relied on by the Court.

result of extensive marketing and brand investment, HGW and the HGW Marks have become symbolic of a way to approach physical and mental wellness as opposed to a type of physical activity.

In 2021 and 2022, HGW obtained its first paid sponsorships from well-known brands such as Rael, Skull Candy, Spotify and Schmooze. Today, HGW continues to collaborate with other companies to further grow the HGW brand.

A. **The HGW Marks**

HGW owns numerous federal registrations issued by the United States Patent and Trademark Office (collectively, the "HGW Marks"):

| Mark | U.S. Reg. No. or U.S. App. Ser. No. | Goods & Services |
|---|---|---|
| HOT GIRL WALK | 7,472,231 | Class 35: Retail store services featuring apparel, fitness apparel, apparel accessories, and gifts; advertising, marketing and promotions; Endorsement services, namely, promoting the brands, good and services of others; promotion of business opportunities; business networking; arranging and conducting special events for business and advertising purposes. |
| HOT GIRL WALK | 7,472, 230 | Class 45: Providing information and advice on personal growth, motivation and self-fulfillment. |
| HOT GIRL WALK | 7,037,847 | Class 25: Athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms.<br>Class 41: Physical fitness training of individuals and groups. |
| HOT GIRL WALK | 98/161,458 | Class 9: Digital media, namely downloadable audio and video recordings featuring personal growth, motivation, self-fulfillment, health, fitness, entertainment and pop culture; downloadable podcasts in the nature of personal growth, motivation, self-fulfillment, health, fitness, entertainment and pop culture |
| HOT GIRL WALK | 98/161,490 | Class 41: Entertainment services, namely providing non-downloadable audio and video recordings featuring personal growth, motivation, self-fulfillment, health, fitness, entertainment and pop culture; entertainment services, namely a multimedia program series featuring personal growth, motivation, self-fulfillment, health, fitness, entertainment and pop culture distributed via various platforms across multiple forms of transmission media; entertainment services, namely providing podcasts in the field of personal growth, motivation, self-fulfillment, health, fitness, entertainment and pop culture. |

| HOT GIRL WALK | 97/869,195 | Class 3: Non-medicated skin care preparations, namely, skin lotions and creams, facial and body sunscreen creams.<br>Class 9: Downloadable software for use on a mobile device for fitness training.<br>Class 13: Sprays for personal defense purposes. |
|---|---|---|
| Hot Girl Walk | 98/678,842 | Class 25: Clothing belts; Bottoms as clothing; Dresses; Footwear; Headwear; Clothing jackets; Loungewear; Socks; Sweatbands; Swimwear; Tops as clothing; Undergarments; Athletic uniforms; Wristbands as clothing. |
| Hot Girl Walk | 98/678,862 | Class 35: Retail store services featuring apparel, fitness apparel, apparel accessories, and gifts; advertising, marketing and promotions; Endorsement services, namely, promoting the brands, goods and services of others; promotion of business opportunities; business networking; arranging and conducting special events for business and advertising purposes. |
| Hot Girl Walk | 98/678,884 | Class 41: Entertainment services, namely, providing non-downloadable audio and video recordings featuring personal growth, motivation, selffulfillment, health, fitness, entertainment and pop culture; entertainment services, namely, a multimedia program series featuring personal growth, motivation, self-fulfillment, health, fitness, entertainment and pop culture distributed via various platforms across multiple forms of transmission media; entertainment services, namely, providing podcasts in the field of personal growth, motivation, self-fulfillment, health, fitness, entertainment and pop culture; organizing, arranging, and conducting meetups in the nature of community, sporting, fitness and cultural events and walking events; arranging and conducting special events for social entertainment purposes; arranging contests; physical fitness training services. |
| HGW | 7,635,719 | Class 45: Providing information and advice on personal growth, motivation and self-fulfillment. |
| HGW | 98/110,695 | Class 25: Clothing belts; Bottoms as clothing; Dresses; Footwear; Headwear; Clothing jackets; Loungewear; Socks; Sweatbands; Swimwear; Tops as clothing; Undergarments; Athletic uniforms. |
| HGW | 98/110,707 | Class 41: Organizing, arranging, and conducting meetups in the nature of community sporting, sporting, fitness and cultural events and walking events; arranging and conducting special events for social entertainment purposes; arranging of contests; physical fitness training services. |

| GRATITUDE, GOALS, CONFIDENCE | 98/678,745 | Class 25: Clothing belts; Bottoms as clothing; Dresses; Footwear; Headwear; Clothing jackets; Loungewear; Socks; Sweatbands; Swimwear; Tops as clothing; Undergarments; Athletic uniforms; Wristbands as clothing. |
|---|---|---|
| GRATITUDE, GOALS, CONFIDENCE | 98/678,761 | Class 41: Entertainment services, namely, providing non-downloadable audio and video recordings featuring personal growth, motivation, selffulfillment, health, fitness, entertainment and pop culture; entertainment services, namely, a multimedia program series featuring personal growth, motivation, self-fulfillment, health, fitness, entertainment and pop culture distributed via various platforms across multiple forms of transmission media; entertainment services, namely, providing podcasts in the field of personal growth, motivation, self-fulfillment, health, fitness, entertainment and pop culture; organizing, arranging, and conducting meetups in the nature of community, sporting, fitness and cultural events and walking events; arranging and conducting special events for social entertainment purposes; arranging contests; physical fitness training services. |

HGW invests significant time and money in advertising the HGW Marks. They are advertised in a variety of contexts and media, including print and on the Internet, https://www.hotgirlwalk.com, TikTok, Instagram, Facebook, and other social media sites, actual HGW-facilitated events, walks, and other promotions. The HGW Marks are also licensed for use with many brand partnerships, including prominent organizations such as Reebok, lululemon, the Strava fitness app, LIFEWTR (PepsiCo.), e.l.f. Cosemtics, TikTok Shop, Halara, Cider, ASOS, and the American Heart Association.

Defendant Fashion Nova, a Los-Angeles based fashion retailer known for delivering affordable, trend-driven apparel to customers quickly, apparently recognized the strength of HGW's brand. In April 2024, Fashion Nova's Social Media Coordinator contacted Mia Lind via email regarding a potential collaboration between Fashion Nova and HGW. On May 7, 2024, HGW emailed Fashion Nova a Rate Card with pricing for collaborations which included the following statement in capital letters: "THIS DOCUMENT IS CONFIDENTIAL, AND INCLUDES PROPRIETARY INFORMATION OWNED BY HOT GIRL WALK LLC. PLEASE RESTRICT DISTRIBUTION TO EMPLOYEES OF YOUR COMPANY AND/OR CLIENT, AND DO NOT SHARE WITH UNAUTHORIZED THIRD PARTIES. HOT GIRL WALK IS A REGISTERED TRADEMARK, AND HGW IS A COMMON LAW, PENDING TRADEMARK, OWNED BY HOT GIRL WALK LLC, ALL RIGHTS RESERVED." The collaboration was never realized or finalized.

### B. Fashion Nova's Infringement

Several weeks ago, HGW discovered that, as early as November 2023, Fashion Nova was offering for sale apparel products titled "Hot Girl Walk" on its website. Fashion Nova even had a dedicated collection of apparel titled "Hot Girl Walk". In late October 2025, HGW purchased or directed the purchase of several of Fashion Nova's allegedly infringing products. Each of the

products that HGW received from Fashion Nova included a hangtag bearing the "Hot Girl Walk" mark.

Prior counsel for HGW sent a cease-and-desist letter to Fashion Nova on October 20, 2025. In response, Fashion Nova made certain changes to its website, including renaming seven products on its website, by changing references from "Hot Girl Walk" to "Hot Girl."  However, Fashion Nova did not entirely eliminate its use of "Hot Girl Walk" on its website and elsewhere  For example, Fashion Nova continued to offer a "Plus Size Hot Girl Walk" collection, and the products sold still had product packaging and hangtags bearing the "Hot Girl Walk" mark. After receiving notice of Plaintiff's Application for a temporary restraining order, Fashion Nova also removed the phrase "Plus Size Hot Girl Walk" from its website.

On November 24, 2025, the Court granted Plaintiff's Application for a temporary restraining order and ordered Fashion Nova, LLC to show cause why a preliminary injunction should not issue. The temporary restraining order enjoined Fashion Nova, in relevant part, from:

1. Using the HGW Marks, or any confusingly similar variation thereof such as "hot girl," on clothing products (including packaging and hangtags) online in the offering for sale or sale of any apparel bearing the HGW Marks or being sold in connection with the HGW Marks . . .  and in all advertising and search engine optimization tools, including, but not limited to metatags, Google Adwords."

2. Directing its Paid Partners and/or third-party affiliates to use the HGW Marks, or any variation thereof, on clothing products (including packaging and hangtags), online (including Fashion Nova's website and social media pages), and in all advertising and search engine optimization tools, including, but not limited to metatags, Google Adwords, and Fashion Nova shall ensure all such Paid Partner and third-parties affiliates comply with this Order;

3. Passing off, inducing, or enabling others to sell or pass off any apparel or related good or service as being affiliated with, authorized or approved by HGW;

4. Committing any acts calculated to cause consumers to believe that Defendant's goods or services are those sold under the control and supervision of Plaintiff, or are sponsored, affiliated, endorsed, or approved by, or connected with, or guaranteed by, or produced under the control and supervision of Plaintiff;

5. From further infringing the HGW Marks and trade name, and damaging HGW's goodwill; and

6. From otherwise competing unfairly with HGW.

On November 26, 2025, the day after the temporary restraining order was served on Fashion Nova, HGW ordered the "Hot Girl Fold Over Pant Set" from Fashion Nova's website.  The

product was shipped on November 28, 2025. When the product arrived, "Hot Girl Walk" continued to appear on the outside packaging and hangtags.

## II. LEGAL STANDARD

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Under *Winter*, a plaintiff seeking a preliminary injunction must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.,* 758 F.3d 1069, 1071 (9th Cir. 2014) (*citing Winter*, 555 U.S. at 20). Courts in this circuit also employ "an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the *Winter* standard" (*Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021)), in which the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a TRO may be warranted where there are "'serious questions going to the merits' and a hardship balance . . . tips sharply toward the plaintiff," and so long as the other *Winter* factors are also met. *Id.* at 1132.

## III. DISCUSSION

The Court concludes that HGW has demonstrated that it is entitled to a preliminary injunction.

### A. Likelihood of Success on the Merits

To prevail on a trademark infringement claim, a plaintiff must demonstrate: "(1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause customer confusion." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1202 (9th Cir. 2012). The Court concludes that Plaintiff has met its burden of showing that it is likely to prevail on its trademark infringement claim with respect to the HOT GIRL WALK® mark.

#### 1. Ownership of a Valid Mark

HGW owns numerous federal registrations, including HOT GIRL WALK® in connection with Class 25 athletic apparel and related Class 35 retail store services. Federal registration of a mark is "prima facie evidence of the validity of the mark, the registrant's ownership of the mark, and the registrant's exclusive right to use the mark in connection with the goods specified in the registration." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014) (citing 15 U.S.C. § 1115(a)).

Nevertheless, Fashion Nova can rebut this presumption by showing that it was the first to use the mark in commerce. *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999). "The first to use a mark is deemed the 'senior' user and has the right to enjoin 'junior' users from using confusingly similar marks in the same industry and market or within the senior user's natural zone of expansion." *Id.*

Fashion Nova contends that its first use of the phrase "Hot Girl Walk" was at least as early as January 3, 2023, before HGW first used the HOT GIRL WALK® mark in commerce for Class 25 goods ("Athletic apparel, namely, shirts, pants, jackets, footwear hats and caps, athletic uniforms"). Fashion Nova, however, used the phrase "Hot Girl Walk" on January 3, 2023 to refer to the Hot Girl Walk concept that had been trending on social media as a result of Ms. Lind's 2021 TikTok video, not as a source-identifying mark for its products or to distinguish its goods. *See* Declaration of Sheri Duran (Docket No. 30-3) ¶¶ 10-11. Fashion Nova did not offer products on its website using the words "Hot Girl Walk" in product names until September 23, 2023, *after* HGW's first use on January 30, 2023. *Id.* at ¶ 12.

Fashion Nova also argues that the mark is merely descriptive of a type of walk, and not deserving of trademark protection. However, because HGW owns several registrations on the Principal Register for HOT GIRL WALK covering clothing in Class 25 and related retail services in Class 35, these marks are presumptively valid. Moreover, the Court finds that the HOT GIRL WALK® mark is suggestive, at least as it relates to apparel and retail services. *See Brookfield Commc'ns, Inc.,* 174 F.3d at 1058 ("Importantly, Brookfield's trademark is not descriptive because it does not describe either the software product or its purpose. Instead, it is suggestive—and thus strong enough to warrant trademark protection—because it requires a mental leap from the mark to the product.").

Accordingly, the Court concludes that HGW has demonstrated it has a protectable ownership interest in the HOT GIRL WALK® mark.

    **2.**    **Likelihood of Confusion**

"While maintenance of a valid and protectable [trade]mark is a prerequisite to bringing a trademark claim, the likelihood of confusion is the central element of a trademark infringement action." *Cytosport, Inc. v. Vital Pharms., Inc.*, 617 F. Supp. 2d 1051, 1065 (E.D. Cal. 2009). Likelihood of confusion "requires the factfinder to determine whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 630 (9th Cir. 2005). Likelihood of confusion is determined by evaluating: (1) the similarity of the marks; (2) relatedness or proximity of the products or services; (3) marketing channels used; (4) strength of the mark; (5) evidence of actual confusion; (6) degree of care likely to be exercised by the purchaser in selecting goods; (7) the accused infringers' intent in selecting his mark; and (8) likelihood of expansion of the product lines. *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979). This test is "pliant" and the "relative importance of each individual factor" is "case-specific" and will vary in each case. *Brookfield Commc'ns, Inc.*, 174 F.3d at 1054.

"Two particularly probative factors are the similarity of the marks and the proximity of the goods." *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 432 (9th Cir. 2017) (citing *Lindy Pen Co. v. Bic Pen Corp.*, 796 F.2d 254, 256-57 (9th Cir. 1986)). These two factors both favor the issuance of a preliminary injunction. In this case, the mark is identical -- HOT GIRL WALK. Importantly, "the more similar the marks in terms of appearance, sound, and meaning, the greater the likelihood of confusion." *Brookfield Commc'ns, Inc.*, 174 F.3d at 1054. The Court also finds that the products are related: both companies (or their partners/licensees) use the mark to sell athletic apparel to the same class of customers. Given that the marks are identical and that

they both use the mark to sell athletic apparel, the Court easily concludes that a reasonably prudent consumer would likely be confused as to the origin of the goods.  Indeed, "[r]elated goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods. In light of the virtual identity of marks, if they were used with identical products or services likelihood of confusion would follow as a matter of course."  *Brookfield Commc'ns, Inc.*, 174 F.3d at 1055–56.

The Court finds that the remaining *Sleekcraft* factors are either neutral, or lean in favor of an injunction. Although suggestive marks are "presumptively weak," *see Brookfield Commc'ns, Inc.*, 174 F.3d at 1058, HGW has invested hundreds of thousands of dollars promoting the HGW marks and the HGW Marks are licensed for use with many well-known brands in the fitness, wellness, and apparel industries, including, for example, Reebok and Lululemon. Notably Linktree recently featured Hot Girl Walk® and Ms. Lind on a billboard in Times Square, New York City from September 25-27, 2025.  And, apparently recognizing the strength of the HGW brand, Fashion Nova reached out to HGW for a possible collaboration. In any event, while "Hot Girl Walk" as a suggestive mark might prove to be weak, "the mark is not so flabby as to compel a finding of no likelihood of confusion" in light of the similarity of the marks and the relatedness of the goods.  *See Brookfield Commc'ns, Inc.*, 174 F.3d at 1058 ("Because the products involved are closely related and West Coast's domain name is nearly identical to Brookfield's trademark, the strength of the mark is of diminished importance in the likelihood of confusion analysis.").

Although HGW has not presented evidence of actual confusion, "at the preliminary injunction stage, evidence of actual confusion is of diminished importance."  *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1072 (9th Cir. 2014), as amended (Mar. 11, 2014). "Because a motion for preliminary injunction normally occurs early in litigation, at that point parties rarely have amassed significant evidence of actual confusion." *Id.* at 1073.

With respect to the degree of care likely to be exercised by the purchaser in selecting the goods, "[c]ourts have found that purchasers of 'relatively inexpensive athletic and sportswear' are 'not likely to exercise a great deal of care in distinguishing between trademarks when purchasing the goods.'" *adidas-Am., Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1060 (D. Or. 2008) (quoting *M'Otto Enters., Inc. v. Redsand, Inc.*, 831 F.Supp. 1491, 1502 (W.D.Wash.1993)).  The Court agrees, but finds that this factor carries little weight.  *See JL Beverage Co., LLC v. Jim Beam Brands Co.*, 815 F. App'x 110, 114 n.1 (9th Cir. 2020).  The Court also affords no weight to the marketing channels used.  *Summit Ice Melt Sys., Inc. v. HotEdge, LLC*, No. 25-914, 2025 WL 2911139, at *2 (9th Cir. Oct. 14, 2025) ("[A]dvertising online is so commonplace that use of the internet for marketing is 'properly accorded . . . no weight.'") (citation omitted)).

With respect to Fashion Nova's intent in selecting the mark, the Court finds that this factor is neutral. Although Fashion Nova knew of HGW's registered mark, *see* Declaration of Amelia "Mia" Lind (Docket No. 9-3) at ¶¶ 34, 37, it does not necessarily follow that Fashion Nova had an intent to confuse, in light of the common usage of the phrase "Hot Girl Walk" to refer to a certain type of walk rather than to athletic apparel.

Finally, with respect to the likelihood of expansion of product lines, the Court finds that this factor carries little weight because the parties already directly compete with overlapping products. *See Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1153 (9th Cir.

2011) ("Where two companies are direct competitors, this factor is unimportant.").

Accordingly, after considering all of the *Sleekcraft* factors, the Court concludes that HGW has demonstrated that a reasonably prudent consumer in the marketplace would likely be confused as to the origin of the goods bearing the mark.

For the foregoing reasons, the Court concludes that HGW has demonstrated a likelihood of success on the merits as to its trademark infringement claim.

### B.     Irreparable Harm

The Court finds that HGW has demonstrated that it will likely suffer irreparable harm in the absence of injunctive relief. A plaintiff is "entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits" for infringement of a registered mark "in the case of a motion for a preliminary injunction or temporary restraining order." 15 U.S.C. § 1116(a). Because the Court has found that HGW is likely to succeed on the merits, it is entitled to a presumption of irreparable harm.  The Court rejects Fashion Nova's arguments that it has rebutted the presumption of irreparable harm.

"The loss of control over business reputation and potential damage to goodwill constitutes an irreparable injury." *Restoration Hardware, Inc. v. Alimia Light*, No., 2023 WL 3639360, at *2 (N.D. Cal. May 24, 2023).  In this case, especially in light of Fashion Nova's reported questionable business practices, *see, e.g.,* Lind Decl. (Docket No. 9-3), ¶ 77, Ex. G, HGW has demonstrated that it will likely suffer damage to its business reputation and goodwill as a result of Fashion Nova's infringement.  Furthermore, as part of its licensing agreements, HGW offers its partners exclusive use of the HGW Marks in the category of their product or service, which is a very attractive component of HGW license agreements for current and potential brand partners.  Fashion Nova's infringement of its marks dilutes the strength and value of HGW's brand, and will likely impede or prevent other businesses from partnering or collaborating with HGW.  Recently, a large, direct competitor of Fashion Nova backed out of a late-stage discussion for a new full year collaboration with HGW, which Ms. Lind believes was the result of Fashion Nova's infringement and the perceived loss of exclusivity.

### C.     Balance of Equities

The Court finds that the balance of equities tips in HGW's favor.  "Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense 'merits little equitable consideration." *Restoration Hardware, Inc. v. Alimia Light*, , 2023 WL 3639360, at *2 (N.D. Cal. May 24, 2023) (cleaned up).

### D.     Public Interest

"The public interest analysis for the issuance of a preliminary injunction requires [the court] to consider 'whether there exists some critical public interest that would be injured by the grant of preliminary relief.'" *Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 659 (9th Cir. Cal. 2009) (*vacated on other grounds, Douglas v. Independent Living Ctr. Of So. Cal.*, __ U.S. __, 132 S.Ct. 1204 (2012)).  When the reach of an injunction is narrow, limited only to the parties, and

has no impact on non-parties, the public interest will be at most a neutral factor. *Cazorla v. Hughes*, 2014 WL 12235425 (Apr. 7, 2014) (*quoting Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138-39 (9th Cir. 2009)).

The Court concludes that the public interest will not be injured by issuance of a preliminary injunction because the scope of the injunction will be narrow (and more limited than the Temporary Restraining Order issued by the Court) and will be limited only to the parties.

### E.     Bond

Pursuant to Federal Rule of Civil Procedure 65(c), the Court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the [C]ourt considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court 'with discretion as to the amount of security required, *if any*.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)) (emphasis in original). This Court "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id*. In this case, the Court orders HGW to post a bond of $5,000, which is "an amount that the Court considers proper to pay costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c);  The bond of $5,000 shall be posted within two business days of the entry of the preliminary injunction.

## IV.    CONCLUSION

The Court concludes that HGW has demonstrated that it is entitled to a preliminary injunction.  However, the Court agrees with Fashion Nova that the Temporary Restraining Order was overly broad.  Now that the Court has a more complete record, the Court finds that HGW has failed to demonstrate: (1) that Fashion Nova has used any of HGW's other marks aside from HOT GIRL WALK®; or (2) that HGW has any protectable ownership interest in "Hot Girl," or that "Hot Girl" is confusingly similar to "Hot Girl Walk." The Court also concludes that the injunction should be modified such that it does not purport to require Fashion Nova to control third parties' actions. The Court will also remove any potentially vague or confusing terms.

IT IS SO ORDERED.